## CORNELIUS KILPATRICK *v.* GRAND TRUNK RAILWAY COMPANY.

### January Term, 1901.

Present: ROWELL, TYLER, MUNSON, START, WATSON and STAFFORD, JJ.

#### Opinion filed March 14, 1902.

*Railroads—Injury to employee—Side ladder on freight car— V. S. 3886, 3887—Proximate cause—Contributory negligence—Instructions—Argument—Second trial.*

In an action against a railroad company by an employee, for injuries received by being knocked from the side ladder of a moving freight car by a post standing in the railroad yard, the position of the ladder on the car is a proximate cause of the injury.

An employee of a railroad company using the side ladder of a freight car, maintained there in violation of the statute, does not assume the risk of injuries caused by the location of the ladder.

Under a statute prohibiting the use of side ladders on freight cars, and making a company using such ladders subject to a penalty and liable for injuries occasioned thereby, the doctrine of assumption of risk cannot be invoked by the defendant in an action by an employee for injuries resulting from the use of such a ladder, on the theory of contract, as such a contract would be against public policy.

The enactment of such a statute is a valid exercise of the police power of the state for the protection of the poor and helpless, though it prevents the employee from assuming the risk by contract.

The plaintiff was mounting the side ladder of a moving freight car in the performance of his duty, and was knocked off and injured by coming in contact with a post standing near the track. In his first attempt to mount the ladder, his foot slipped off the truck box, and he was left in a position of peril. He was successful in his second attempt to mount the ladder. He knew the location of the post, but not its distance from the rail; he had often ridden on side ladders past other posts in the yard in safety. He testified that he did not think of the danger from this post at the time of the accident, and that, if he had, he would have known that he was liable to be hit by it. *Held*, that the question of his contributory negligence was for the jury.

An instruction that an employee cannot recover if he voluntarily chooses a dangerous method of performing his work, when other safer methods are open to him, is properly refused, since it omits the essential element of the employee's knowledge of such safer methods.

An instruction that an employee is guilty of contributory negligence, if, knowing the danger of performing his work in the manner selected, he fails through inattention or forgetfulness to avoid it, is properly refused, since forgetfulness at a critical moment is not, as matter of law, negligence.

A request for an instruction on the question of contributory negligence, which embodies one phase of the evidence, is properly refused, when the general rule of law on that subject has been correctly given.

A request for an instruction which makes the right of recovery depend upon one of a number of facts in the case, is properly refused.

Improper argument immediately withdrawn will not be considered reversible error.

Granting a new trial on exceptions, wipes out the first adjudication entirely, and the second trial proceeds *de novo,* and the damages therein are not controlled by the award in the first trial.

CASE for personal injuries. Plea, the general issue. Trial by jury at the September Term, 1900, Orleans County, *Taft,* C. J., presiding. Verdict and judgment thereon for the plaintiff. The defendant excepted.

*C. A. Hight, L. L. Hight* and *R. W. Chamberlain* for the defendant.

The presence of a side ladder upon the car concerned in this accident is not determinative of the defendant's liability. It was not the cause of the injury, and the injury must result from the presence of the side ladder in order to make the defendant liable. The plaintiff was injured not because of the side ladder, but on account of his own inattention or forgetfulness. The plaintiff assumed the danger when he mounted the ladder on the side of this car. The danger was obvious and known to the servant. He had had eighteen years' experience

in working about the cars.    He knew the location of the post which struck him.    He forgot about the existence of the post, and by his forgetfulness and inattention, he sustained this injury.    Beach on Con. Neg. s. 37.    The negligence of the plaintiff having contributed to the injury he cannot recover. The argument of counsel for the plaintiff was improper and vitiating.    It was calculated to prejudice the jury against the defendant.    We ask the court to rule that the assessment of damages in the first case is to stand.    The defendant was in no sense responsible for the first mis-trial, and the finding of the first jury was not impeached in any way.

*E. A. Cook* and *George B. Young* for the plaintiff.

Two questions only are presented for consideration.    1. Was the plaintiff guilty of negligence as matter of law, and did such negligence contribute to the injury; and 2, did the plaintiff assume the risk?    Assumption of risk is contractual, and may arise by express contract, or by implication by continuance in service after discovering the danger.    The legislature has prohibited the use of side ladders and made such use penal.    This enactment was for the protection of a class of persons deserving such protection.    This protection cannot be contracted away, otherwise the statute fails of its object.    *Narramore* v. *Railway Co.,* 96 Fed. Rep. 298; *Baddley* v. *Granville,* L. R. 19, Q. B. Div. 423; *Thomas* v. *Quartermaine,* L. R. 18, Q. B. Div. 685; *Severance* v. *Talc Co.,* 72 Vt. 181; *Dumas* v. *Stone,* 65 Vt. 452; *Eckman* v. *Railroad Co.,* 169 Ill. 312; *Short* v. *Mining Co.,* 45 L. R. A. 603; *Holden v. Hardy,* 169 U. S. 366.

The side ladder was responsible for the injury whether plaintiff assumed the risk or not, and any agreement by which the plaintiff released the defendant from liability for injuries resulting from its use would be contrary to the statute, and would, in effect, repeal the statute.    Such an agreement would be against public policy, and void.    The plaintiff knew of the

general location of the post, but did not know its distance
from the rail, and had frequently ridden past the other posts
in the yard on a side ladder, in safety. The risk was not an
ordinary one of the service, but it was extraordinary and un-
lawful, and therefore not assumed by the plaintiff. It was a
risk which existed only through the master's negligence. *Sev-
erance* v. *Talc Co., supra.*

It will be remembered that the plaintiff found himself in a
position of danger when he first attempted to mount this car.
Was he to jump off and run the risk of being thrown under
the train, or climb to the top and perform his duty? A case
very much in point is *Whipple* v. *Railroad Co.,* 5 Am. & Eng.
R. R. Cas. 520. See also *Dorsey* v. *Construction Co.,* 42 Wis.
596; *Johnson* v. *Railway Co.,* 43 Minn. 53; *Hughes* v. *Rail-
road Co.,* 12 Am. & Eng. R. R. Cas. 560.

We submit that the plaintiff's conduct under all circum-
stances which concerned the accident was not negligence as
matter of law. *Noe Roux* v. *Lumber Co.,* 13 L. R. A. 728.
It cannot be said that the plaintiff was negligent in mounting
a moving car for it appears that he was entirely successful in
so doing, and if defendant's negligence had not intervened he
would have continued on his way in safety. The question of
contributory negligence was submitted to the jury on proper
instruction, and the jury returned a verdict that the plaintiff
was not guilty of contributory negligence. *Babcock* v. *Rail-
way Co.,* 150 Mass. 467; *Kane* v. *Railway Co.,* 128 U. S. 91;
*Snow* v. *Railroad Co.,* 8 Allen 449.

The defendant's request relative to the safer method of
doing the plaintiff's work was not sound, because it did not
charge the plaintiff with knowledge of the safer method.

The objection to Mr. Cook's argument will not avail the
defendant. If there was any impropriety in the statement, the
retraction and explanation were a full and complete with-

drawal thereof, and such a statement as deprived the original declaration of any injurious effect upon the jury. *Rea* v. *Harrington,* 58 Vt. 181; *Morrill* v. *Palmer,* 68 Vt. 115; *Billings* v. *Ins. Co.,* 70 Vt. 477.

The granting of a new trial in Supreme Court vacated everything that occurred upon the former trial, and the case went back to the County Court to be tried *de novo,* therefore, the new assessment of damages must stand.

STAFFORD, J. The plaintiff is seeking to recover for injuries sustained by him, as an employee of the defendant, in consequence of the latter's running a car of its own, equipped with a side ladder instead of a ladder upon the end or inside, in contravention of the statute, and having a post dangerously near its track; whereby the plaintiff, using the ladder to mount the car while in motion, was knocked off by the post, and his foot run over by the wheels.

STATEMENT OF FACTS AND HISTORY OF THE CASE.

The Grand Trunk Railway runs through the village of Island Pond, where it has a large yard, fourteen or fifteen tracks wide. The tracks extend east and west. On the south side are freight sheds,—a long line of buildings. On the north side is a hotel. Connecting the sides is an overhead bridge, built by the Railway Co., some twenty feet above the tracks, and supported by eight or ten standards about twenty feet apart, each standard consisting of two posts strengthened by a brace and framed at the bottom into a timber resting upon the ground. The passenger station is near the middle of the yard, dividing it into what are called the east end and the west end. The bridge is twenty-five or thirty feet west of the station. All but two of the tracks are on the north side of the station. Those two are on the south side, and are, first from the station, the main line, and second, the freight-shed track. A platform extends around the station and under the bridge.

The freight-shed track is fifty or sixty rods long, and at each end joins the main line, having probably two-thirds of its length west of the bridge; and it runs so near one of the standards that the north rail is only forty-one inches from it; so that, when a freight car is on the track opposite the standard, the distance between the car and the post is only twenty inches.

The accident occurred on the 14th of October, 1898, and the foregoing description is to be understood as of that date. The location of the standards had not been changed since the bridge was built, in 1889, but the location of the freight-shed track had been changed, bringing it thus near the post instead of, as before, at some considerable distance from it. This change had been made about a year before the accident. No other standard or post in the yard stood so near the track by six inches, and most of them were still farther away.

Kilpatrick had worked for the Company in this yard nearly all the time for eighteen years. From the May until the September before his accident in October, he had been yard master. Now he was acting as switchman; and it was his duty to assist in shunting cars, making up trains, and letting them in and out of the yard under the direction of the foreman.

The defendant introduced no testimony, and the only witnesses, aside from the physician, were the engineer of the train upon which the plaintiff was riding when the accident occurred and the plaintiff himself. The engineer did not see what happened, so that the case rested substantially upon the plaintiff's own story. There had been a previous trial resulting in a verdict and judgment for the plaintiff, which this court reversed on the ground that the plaintiff was guilty of contributory negligence as matter of law. *Kilpatrick* v. *The Grand Trunk Railway Co.*, 72 Vt. 263, 47 Atl. 827, 82 Am. St. Rep. 939. Upon the second trial, the evidence was so far varied that the question was submitted to the jury.

The plaintiff's story was, that about one o'clock in the morning he started from a point near the west end of the yard, where he had been at work, and came to the passenger station on his way to do other work at the east end. As he came upon the platform, he saw approaching from the east, on the freight-shed track, a train of four box cars and one empty coal car pushed by a backing engine attached to the east end. He knew that there were cars already standing on this same track farther west, beyond the bridge, and considering it his duty to be there when the train should come up to them, and thinking there was not time for him to walk or run ahead in the dark, and in order to be where he might the better signal to the engineer with the lantern he was carrying, and where he might put on the brake if necessary to prevent a too violent collision which might break the drawbars, or even throw the standing cars foul upon the main line, where they would be in the way of trains soon to be let in, he made up his mind to mount the first car. This was a Grand Trunk box car, and was equipped with a side ladder at the west end, on the north side, the side towards him, and had no ladder on the end. So, having his left arm through the bail of the lantern and both hands free, he caught hold of a round of the ladder with his right hand, and stepped with his left foot upon the truck box under the car, the box that covers the end of the axle. His foot slipped from the box to the ground, and, running along a few steps beside the car, he tried again in the same way, and succeeded, drawing himself up so far on the ladder that his feet were on the bottom round and his head at the top of the car, when he struck against the post of the standard, and was knocked off; and the wheels passed over his foot, inflicting the injury for which he claimed to recover. As to the speed of the train, he had said on the first trial that he could not tell accurately, but upon being pressed for an opinion, had esti-

mated it at eight or nine miles an hour.   Upon this trial he reduced his estimate to three or four miles, the rate at which the engineer, also, testified the train was running.

### THE STATUTES RELIED UPON.

V. S. 3886 and 3887 declare that no railroad corporation shall run a car of its own with a ladder or steps to the top of the same on the side, but that the same shall be on the end or inside of the car; and that it shall forfeit fifty dollars for each day's neglect to comply with this requirement, and be liable for damages and injuries to passengers and employees resulting from such neglect.   This car was one of the defendant's own, and was being run in violation of the statute.   The trial court correctly held that its action in that respect was negligence in law.   Such was the holding of this court when this case was here the first time.   72 Vt. 263.

### THE QUESTIONS RAISED BELOW.

At the close of the plaintiff's testimony the defendant moved for a verdict on two grounds: (1) that the plaintiff was guilty of contributory negligence; (2) that he had assumed the risk.   The court said it would hold, *pro forma*, that he did not assume the risk; that the defendant was guilty of negligence as matter of law; that it thought the only question aside from damages was that of contributory negligence,—which it thought should be submitted to the jury.   To the ruling that the defendant was negligent as matter of law, and the ruling that the plaintiff did not assume the risk, the defendant excepted, and requested the court to hold, as matter of law, that the side ladder was not the proximate cause of the injury.   It did not ask to have it left to the jury, as a question of fact, and evidently did not desire that; for, although it excepted to the refusal of the court to hold that the side ladder was not the

proximate cause, it did not except to its omission to submit the question to the jury, nor to the charge itself, wherein it was assumed that the injury resulted from the presence of the side ladder. In view of the attitude taken, the court had a right to understand that the defendant stood upon its point of law alone. So we think it is not open to it now to argue that the question was one of fact and ought to have been submitted to the jury.

## PROXIMATE CAUSE.

In refusing to hold as matter of law, that the side ladder was not the proximate cause, there was no error. That certainly could not be ruled as matter of law. Leaving out of view the question of contributory negligence, there were three essential factors in the accident: the post, the ladder, and the man. It was necessary that the post should be near enough to strike the man when on the ladder; it was necessary that the man should be on the ladder to be struck; it was necessary that the ladder should be on the side instead of the end, to bring the man near enough the post to be struck. If either one had been omitted, the accident would not have occurred. If the post was too near by any one's fault, it was the fault of the defendant; but leave that question out, and say the post was not near enough to be dangerous except to one on a side ladder; then we have only two factors left: (1) a ladder on the side instead of the end, (2) a man on the ladder. Can one be said to be any more proximate to the injury than the other? Are they not mutual, contemporaneous? As said before in this case (72 Vt. 266), "In the use of the words *proximate cause*, negligence occurring at the time of the injury is meant." Did not the negligence of the company in having a side ladder occur at the time of the injury as much as the presence of the man upon the ladder? Well then, if both causes were equally

proximate, and one cause existed through the negligence of the defendant and the other existed without the fault of the plaintiff, and while and because he was in the performance of his duty towards the defendant, is not the defendant liable? And if the plaintiff was not guilty of contributory negligence, but was rightfully and prudently where he was, what question was there for the jury, of proximate or remote cause? Even if the question be treated as saved by the exception, we think the court was right in assuming that the side ladder was the cause of the injury, and that the defendant was liable, unless the plaintiff was guilty of contributory negligence, or had assumed the risk.

Pertinent instruction may be found in two cases from the Federal Supreme Court. The Michigan Central R. R. Co. was bound, by a municipal ordinance of Chicago, to fence its track, but omitted to do so; and the plaintiff, a child of nine years, bright and well grown, but deaf and dumb, came with his companions in the course of play, upon the track, there being no fence to prevent him, and was run over by a passing train. The Circuit Court directed a verdict for the defendant on the ground that there was no evidence of legal negligence on its part. The Supreme Court held otherwise. It was there argued, in support of the judgment below, that the want of a fence was not the cause of the injury. The court said: "In the sense of an efficient cause, *causa causans,* this is no doubt strictly true; but that is not the sense in which the law uses the term in this connection. The question is, was it *causa sine qua non,*—a cause which, if it had not existed, the injury would not have taken place; an occasional cause?—and that is a question of fact, unless the causal connection is evidently not proximate." *Hayes* v. *Mich. Cent. R. R. Co.,* 111 U. S. 228, 4 Sup. Ct. 369, 28 L. ed. 410.

In *Union Pacific Ry. Co.* v. *McDonald,* 152 U. S. 262, 282, 283, 14 Sup. Ct. 619, where a child was burned by running into a hot slack pile left unfenced in disregard of the statute near the mouth of the Company's coal mine, it appeared that the plaintiff was frightened by miners, who came up out of the pit calling, "Let's grease him! Let's burn him!" and ran away making for the village where his mother was, but slipped and fell into the pile. The Circuit Court held the child not guilty of contributory negligence as matter of law, and told the jury that the only question was one of damages, the defendant being negligent in law in failing to have a fence; and the Supreme Court affirmed the judgment, citing and relying upon the Hayes case.

### ASSUMPTION OF RISK.

Did the court err in its *pro forma* ruling that the plaintiff did not assume the risk? The doctrine of assumption of risk may be regarded as only one phase of the broader doctrine expressed by the maxim, *volenti non fit injuria.* One is not to be allowed to recover for an injury which he has voluntarily brought upon himself, and he *has* brought it upon himself voluntarily if it resulted from a course of action which he took with full knowledge and appreciation of the risk. Moreover, one who enters upon a regular employment is presumed to know and appreciate the risks ordinarily incident thereto, and he assumes them. And when, in the course of his employment, a special and obvious risk is presented to him, one not ordinarily incident to the business, he may, as a rule, refuse to accept it, and if he choose to encounter it he assumes that also. *Carbine's Admr.* v. *R. Co.,* 61 Vt. 348, 17 Atl. 491; *Dumas* v. *Stone,* 65 Vt. 442, 25 Atl. 1097. The latter rule is subject to some exceptions, but they are not in point here, and we do not stop to notice them. But sometimes the legislature, in tenderness for

a class liable to abuse or oppression, railroad or factory hands for example, forbids the use of a certain dangerous appliance, and gives an action to employees who may be injured as the result of using it. Such is this case. Now, it must be apparent to every one that the legislature understood perfectly well that the employees who might be injured in using the appliance would be using it knowingly and voluntarily. In the case of a side ladder, for instance, they could not have expected that employees would not know they were using a side ladder; still they give an action for the injury.

So we think the ordinary doctrine of assumption of risk does not apply to a case where the negligence of the employer consists in the disregard of a statutory duty imposed upon him for the protection of his employees; certainly not when an action is expressly given for the breach. And this is exactly the difference between cases of negligence arising from the disregard of a statutory obligation, like the present, and cases of negligence arising from the failure of the employer to fulfill his common law duty of providing safe appliances,—that in the latter case the common law duty is to be applied in connection with the common law rule of the assumption of risk; while in the former, the statutory rule is accompanied by the bestowal of a right of action for the breach of it in favor of those who must necessarily be deprived of any action by the application of the common law rule of the assumption of risk; and consequently the common law rule is inconsistent with the statute and falls to the ground. *Baddeley* v. *Earl Granville,* 19 Q. B. D. 423; 17 Eng. Rul. Cas. 212, with notes at page 237.

On the other hand, the doctrine of assumption of risk may be regarded as purely a matter of contract, express or implied, between master and servant; and, when so regarded, the servant's inability to recover is put on the ground that he was

hired to do that very thing, and paid for taking that very risk. If that theory should be adopted in this case, then the first question would be whether in view of the statute, the plaintiff *could* assume this risk as a part of his contract.

The statute is a criminal one to the extent that it imposes a penalty of fifty dollars for each day's disobedience; and it also gives, as a still more efficient means of securing its observance, a private action in favor of the person injured. How plain it is that the act is an exercise of the police power of the state for the protection of life and limb among a large class of its people. And how easy it would be to thwart the whole purpose of the legislature by holding, as we are asked to do, that the class thus sought to be protected not only might formally contract away their protection, and relieve the road of its public duty thus imposed, but that the very fact of their using the ladder, seeing and knowing it was on the side of the car, constituted in law such a contract. We cannot adopt so bold a conception of judicial duty.

If the doctrine of assumption of risk is to be regarded as contractual, then we hold that the statutory protection cannot be bought and sold, but that the policy of the law forbids it in the interest of public welfare. This very question was thus decided in *Narramore* v. *Cleveland etc. Ry. Co.,* 96 Fed. Rep. 298; 37 C. C. A. 499; 48 L. R. A. 68, where the judgment is laid down by *Taft,* J., with a breadth of view and vigor of reasoning that leaves little need or excuse for treating the subject further. There, too, the authorities on both sides are cited, criticized and distinguished.

If it be objected that the statute when thus read deprives the laborer of his right to make his own contracts, the answer is to be found in the principle that the state has a right to protect its poor and helpless, even to that extent, if need be. *Knoxville. Iron Co.* v. Harbison, 183 U. S. 13. Such is

the basis of the decisions that uphold the Utah labor law, restricting the hours of mining work to eight per day—*Short* v. *Bullion etc. Co.,* 45 L. R. A. 603; *Holden* v. *Hardy,* 169 U. S. 366—statutes that forbid the employment of children in certain callings, the store-order acts, and the long standing statutes against usury, in defence of one of the last named of which this court held, some twenty years ago, that even a release under seal given by the borrower at the time of the loan did not bar his right to recover the unlawful rate, declaring that "the statute was intended for the protection of the weak against the strong; and public policy requires that it should not be evaded nor its force abated." *Rowell* J., in *Herrick* v. *Dean,* 54 Vt. 568.

Everybody knows that there are large classes who get their living from day to day, in such service as that in which the plaintiff was engaged, who must work where they are working, and keep their job at all hazards, if they would not bring themselves and their families to want. To say to such men, "If you do not like the conditions you may quit," is often only a heartless mockery. The legislature understood this; and the act we are considering was an attempt to better the condition of that very class by compelling the employer to yield something of profit in the interest of humanity, and to save the lives and limbs of his workmen by adopting safer instruments of labor. It seems to us a court should be very slow to construe the beneficial purpose out of such a law, or make it of no effect. On broad lines of public good and social progress, it is plain that such legislation must be largely looked to if government is to remain firm and secure in the respect and affection of the people.

### CONTRIBUTORY NEGLIGENCE.

Yet it does not follow that an employee who is injured, by reason of the neglect of his employer to comply with the statute, can recover under all circumstances. By the language of the statute, the right to recover is limited to injuries "resulting from such neglect;" and, as this court has once decided in this very case, that means resulting from such neglect alone; and the plaintiff must, as in other actions of this character, show that his own negligence did not contribute to the injury. But the doctrine of contributory negligence is entirely separate and distinct in theory from the doctrine of assumption of risk, although, as a practical matter, the fact that the employee knew and appreciated the risk he was running may, in the circumstances, justify or even require a finding that he was guilty of contributory negligence; or the negligence may consist entirely in the manner in which the risk is met.

To speak concretely, take this very case,—the use of a side ladder. They had been used by employees for years, and doubtless by such use the risk had been assumed. Now, by reason of the statute, the risk is not, and cannot be assumed. Yet the use of it under the given circumstances may be negligence and may even be so gross as to be negligence as matter of law.

The defendant here claimed that the plaintiff was guilty of contributory negligence as matter of law, and based the claim mainly upon the ground that the plaintiff knew the location of the post and the track, their nearness to each other, and the consequent danger to one riding by the post on a side ladder. The plaintiff admitted that he knew the location of the post and the rail in a general way, but denied that he knew the distance between the two, and testified that before the accident he did not know of any reason why one could not ride safely by the post on a side ladder; that he had never tried it nor

seen it tried, although he had ridden safely past other posts in the same yard.    At the first trial he had testified as follows, referring to the post against which he struck:

"Q.    You knew the location of it; you had seen it there every day for years?    A.    Yes, sir.

Q.    But you forgot at that moment?    You didn't think about it at that moment?    A.    I didn't think about it at that moment.

Q.    Ever think about that question of getting injured as you were riding along through on those cars anywhere,— about hitting those posts along there anywhere?    A.    No, sir.

Q.    Never thought of it?    A.    No, sir.

Q.    You knew the danger if you did get hit?    A.    Yes, sir.

Q.    You knew, with respect to this one, that you were liable to get hit, if you had thought ot it?    A.    Yes, if I had thought of it."

Upon this testimony we are asked to say as matter of law that the plaintiff was guilty of contributory negligence.    We think it was a question for the jury.    Taking the plaintiff's testimony in the light most favorable to him, as we are bound to do, it means that, even if he had taken thought, he would not have known that he would be hit in the position in which he then was, but only that he might be, that he was "liable" to be, and that such thought, if it had occurred to him, would not have been the recollection of some danger which he had thought of before, for he says he had never thought of it, but would have been his opinion concerning the danger if it had occurred to him to form an opinion at that time.    The fact that he did not do this at that time is not of itself negligence in law.    It is a fact to be considered by the jury, with all the other facts.    The law required of him the prudence of a prudent man.    The prudent man is not the man who never forgets

anything, who is never guilty of any inattention, who never fails to think of any possible danger to which he is exposed. That is the perfect, the infallible man.   Circumstances may excuse ignorance, forgetfulness, inattention, whenever the jury may reasonably say that a man so placed might be so ignorant, or forgetful, or inattentive, without losing his right to be called a prudent man in the circumstances.   And here the circumstances must be attended to.   The plaintiff was attempting to mount the car to perform his duty.   In his first attempt his foot slips from the box, and he finds himself in a position of danger.   In the moment's struggle, his mind intent upon its object, he does not think of the post at all.   Considering his situation at the instant, can it be said as matter of law that his failure to think of the post and of his liability to be struck by it, was negligence?   There may have been ample time for him to have reached a place of safety if his foot had not slipped. In his second attempt, we cannot expect of him quite the same calmness and deliberation as in his first.   It is the miscarriage of the first attempt that has placed him in an unexpected and dangerous position, where he must decide and act quickly.   We are much aided in this inquiry by a case remarkably in point— *Kane* v. *Northern Central Ry. Co.,* 128 U. S. 91; 32 L. ed. 339.   There the plaintiff, a brakeman, in letting himself down from the end of a car to pass over a lumber car to the next one, where he belonged, fell between the cars, and was injured by reason of one of the steps being gone from the end of the car he was getting down from.   He knew the step was gone and had called the conductor's attention to it, and the conductor had promised to have it set out at a station soon to be reached.   But it was a dark, stormy, bitter cold night in the winter and he was in a hurry to get to his post, and forgot the step was missing until it was too late.   If he had not forgotten, he could have avoided the accident.   If he had thought

a moment sooner, he could still have saved himself by draw-
ing himself back up.   The Circuit Court ordered a verdict
for the defendant on the ground of contributory negligence;
but the Supreme Court of the United States reversed the judg-
ment, and held that it ought to have been left to the jury "to
determine whether the plaintiff, in forgetting or not recalling,
at the precise moment," that the step was missing, "was in the
exercise of the degree of care and caution which was incum-
bent upon a man of ordinary prudence in the same calling, and
under the circumstances in which he was placed;" saying that,
if he was, he was not defeated of his right to recovery by con-
tributory negligence.   *Harlan*, J., at p. 96.   The case is ap-
proved in *Union Pacific Ry. Co.* v. *McDonald*, 152 U. S.262,
281, 282.

In view of all the surroundings here, the duty of the
plaintiff as the defendant's servant, the need, if need there was,
to mount the car to set the brake or give the signals or be at
the place of collision, the speed of the train, the darkness, the
mischance of the plaintiff in his first attempt to get on, his
knowledge of the post and track, his experience or want of
experience in passing there, his position upon the ladder, the
exigency, and his failure to think at that time of his liability
to be struck,—in view of all this, we think it was fairly within
the province of the jury to determine whether the conduct of
the plaintiff deserved to be called negligent.   The facts are
not, in our opinion, sufficiently decisive to make the question
one of law.

The court submitted to the jury the question whether the
plaintiff had been guilty of contributory negligence; and to its
charge as given upon this subject no exception was taken.
The defendant presented, however, eleven requests none of

20

which was granted, and excepted to the refusal in respect to each. Each request, therefore, must be considered.

## REQUESTS TO CHARGE.

The first was to charge that the plaintiff could not recover, without specifying any ground, and is sufficiently covered by the foregoing reasoning, as is also the second, which requests the same charge on the ground that the plaintiff was guilty of contributory negligence.

The third and fourth insist that the plaintiff by the very fact of knowingly and voluntarily using a side ladder, necessarily assumed all the risks and perils incident thereto. This question has been already disposed of.

The fifth reads as follows: "That if the plaintiff voluntarily and without necessity, chose a dangerous method of performing his work, when other safer methods were open to him, then he assumed the risks and perils arising from the method which he chose, and if injured because of such choice, and because of the performance of his work by the dangerous method, he is not entitled to recover."

This request was properly refused, because it omits the essential element of knowledge on the part of the plaintiff that other safer methods were open to him, and that the method he was choosing was dangerous. It is not enough that he voluntarily chose a way which the jury could see was dangerous, instead of one which the jury could see would have been safer, if it did not so appear to him, nor would necessarily have so appeared to a man of prudence under those circumstances.

The sixth was: "That if the plaintiff knew, or in the exercise of due care ought to have known, of the danger of getting upon the car and riding, or attempting to get on and ride, as he was attempting to do, by the supports of the overpass,

and from inattention, indifference, absentmindedness, or forgetfulness, failed to avoid such danger, and was injured, he was guilty of negligence, and cannot recover." This was properly refused because it cannot be said that inattention or forgetfulness at the critical moment was necessarily, and as matter of law, negligence. The question would still remain whether he was acting as a prudent man in the circumstances. And, besides that, the court did charge upon the subject of contributory negligence and in a manner not excepted to. In so charging it laid down the general rule that the plaintiff was bound to show that he was acting as a careful and prudent man would act under the same circumstances. This is the true rule; and it was not the right of the defendant to dictate the language of the instruction, or to select certain possible phases of the evidence and formulate them into a rule of law, to take the place of the general and long approved form which the court adopted.

For the same reason, the court properly refused the seventh request, which was, that if the plaintiff knew of his danger, but temporarily forgot it, he could not recover.

In the eighth, ninth and tenth requests, the defendant singled out the question of the speed of the train, and insisted that the plaintiff could not recover if he *thought* the train was going faster than he could naturally walk or run, or about eight or nine miles an hour, or if it was in fact moving at such a speed. These requests were properly refused, for the question of negligence could not be made to turn entirely upon one isolated fact, but was to be determined upon a view of all the facts.

The eleventh request was to charge that the side ladder, as matter of law, was not the proximate cause of the accident, —a subject already discussed and disposed of.

### THE ARGUMENT TO THE JURY.

One of counsel for plaintiff, in arguing to the jury, stated that had the plaintiff failed in his duty at the time of the accident, or failed to do what he attempted at the time, it would not have been long before he would have had notice from the defendant.   To this argument, the defendant objected and excepted; and then the advocate inquired of the court if he had not the right to argue and ask the jury what they would do to a man who failed to do his duty; and, upon being told that such argument was not legitimate, said that he withdrew all that had been said upon the subject.   The defendant asks special consideration of this exception.

Although an exception was allowed to what had been said, the ruling seems to have been in favor of the excepting party; and in the absence of any indication of bad faith, and in view of the instant submission and complete retraction, we should hardly be justified in considering the exception at all.

Moreover, it was a question for the jury to consider, whether the plaintiff, in attempting to mount the car, was performing a duty to the defendant,—doing what the defendant would reasonably expect him to do, and what he would naturally and rightly understand was expected of him.   It was to this point that the argument was addressed.   It was merely claiming, not by way of fact, but by way of inference and probability, that the plaintiff was acting in the line of his duty, and so clearly so, that, if he had failed to do as he did, he might reasonably have expected to be dismissed.   We are not prepared to say that so far as the argument had proceeded it was not legitimate.

### THE SECOND TRIAL WAS DE NOVO.

The verdict on the first trial was $1,750.   Upon the second it was $3,000.   The defendant excepted to judgment

being rendered for the larger sum, claiming that the damages had been determined by the first verdict, and that the judgment could only be for that sum.

When the new trial was granted, the whole adjudication of the first was wiped out, and the case proceeded *de novo*. Such has always been the practice here. *State* v. *Bradley,* 67 Vt. 465, 472, 473, 32 Atl. 238.

*Judgment affirmed.*