EARLE V. ENOS *v*. OWENS SLATE COMPANY.

Special Term at Rutland, November, 1934.

Present: POWERS, C. J., SLACK, MOULTON, THOMPSON, and SHERBURNE, JJ.

Opinion filed January 2, 1935.

 

*Lawrence, Stafford & O'Brien* for the defendant.

*Novak & Bloomer* for the plaintiff.

SHERBURNE, J. This case has been here before. See 104 Vt. 329, 160 Atl. 185. It is an action to recover for hauling slate. Verdict and judgment were for the plaintiff and the case comes here upon defendant's exceptions to the refusal of the court to direct a verdict in its favor and to the refusal of the court to set aside the verdict. The case turns upon whether or not defendant's promise was affected by the Statute of Frauds (P. L. 1675), and as to whether it was original or collateral.

The facts are substantially like those developed in the former trial, and for convenience we will use our former language in restating them except where they are now different. The plaintiff was trucking slate for the Granville Slate Company from the defendant's quarry to the Hydeville railroad station. He was unable to get his pay, and he stopped work. In the middle or latter part of June, 1927, one of the Owens called him to the quarry and inquired of him why he was not drawing the slate. He informed the three Owens present, whose authority to bind the defendant is not questioned, that he would not draw any more slate until he received his pay. To this statement, Robert Owens, who appears to have been the defendant's spokesman, replied: "We won't get our money for our slate till the slate is drawn," and then occurred the following which we quote from the transcript. "Q. What did you say? A. Well, I says, 'I can't go ahead and draw slate till I get some money somewhere; I am paying help and paying twelve per cent interest on trucks and I didn't have the capital to go ahead with.' Q. And did he reply to that? A. 'Well,' he said, 'we won't either of us get our pay till you draw the slate'; 'Well,' I said, 'I would not go ahead any further.' Q. All right, did Rob say anything else to you about drawing the slate? A. Yes. Q. What did he say? A. He said, 'You go ahead and draw the slate and we will see you will get your pay.'" According to

the witness Haven, Robert Owens on this occasion said: "You go ahead and draw the slate and we guarantee you will get your pay." The plaintiff then immediately resumed work.

Much of the evidence indicates that the original promissor, the Granville Slate Company, remained liable for this hauling, and that the plaintiff so understood it all along. He admitted that he tried to get his pay from that company first. There was evidence which it was claimed showed that the plaintiff actually received payments from that company after the defendant made its promise. But the evidence was not all one way. The defendant had sold this slate to the Granville Slate Company. It was directly interested in getting it to the cars so that it could get its pay. The plaintiff insisted that the payments above referred to were made to apply on the old account that accrued prior to his arrangement with the defendant. Payments on the new hauling account were made by Robert Owens by his personal checks in February, 1928. It is true that there was evidence to the effect that Owens made the payments above referred to from money supplied by the Granville Slate Company, and that he so told the plaintiff, but this was not conceded. This testimony was such that the jury might well understand that he was acting and speaking for the defendant. The job of hauling slate lasted until the last of February, 1928. It appeared that the plaintiff from the first and until long after the slate had all been drawn tried repeatedly to get money on this account from the Granville Slate Company, and that on April 2, 1928, he rendered to it a bill in which he gave credit for the payments made by Owens. He explained that he did this because he didn't want any trouble with the defendant. It further appeared that he never asked the defendant for any money until late in 1927 or early in 1928, and that he never sent it a bill. He admitted that during this time he hauled other slate for the defendant and got his pay promptly.

Along the theory upon which the case was submitted to the jury that the defendant and the Granville Slate Company cannot both be liable for this hauling, the defendant insists that nothing is shown which releases the latter company from liability, and that consequently a verdict in favor of the defendant should have been granted. Although this case may not be quite as strong for the plaintiff as when here before, we are of the opinion that there was sufficient evidence to warrant submitting

128

this question to the jury. As before, we think there was evidence warranting the inference that the defendant intended to become primarily bound for the hauling sued for, and that the plaintiff had a right to and did so understand it. The motion for a directed verdict was properly overruled.

■ Among other grounds the defendant moved to set aside the verdict because it was against the weight of the evidence, and, when the motion was overruled, excepted on the ground of abuse of discretion. It claims that although there may have been enough evidence to submit the case to the jury, yet it was not enough to overcome the weight of the evidence rule. As said in *Catto* v. *Liberty Granite Co.*, 101 Vt. 143, 147, 141 Atl. 684, 685: "We do not upset a verdict merely because the evidence preponderates against it. To justify this Court in sustaining the exception under discussion it must appear from the record that the evidence so preponderates against the verdict as to leave no reasonable basis upon which it can stand." Upon a careful study of the record before us we are not convinced that the case is so clearly with the defendant as to bring it within the rule referred to.

■ The defendant moved to set aside the verdict by setting up that after a trial of this case at the preceding term a verdict obtained upon substantially the same evidence as here was set aside by the county court, claiming that that decision had become the law of the case. When a verdict is set aside and a new trial granted, the whole adjudication of the first is wiped out, and the case proceeds *de novo*. *Kilpatrick* v. *Grand Trunk Ry. Co.*, 74 Vt. 288, 309, 52 Atl. 531, 93 A. S. R. 887. And rulings of the court at the former trial are not binding on the court at the new trial. 46 C. J. 461.

The jury brought in a verdict for $1,196.06, which the defendant moved to set aside as excessive and showed that it could not exceed $820.34 and interest from March 1, 1928, a total of $1,091.25. The defendant arrives at this figure of $820.34 by figuring only on slate produced on and after July 1, 1927, and defendant says that the June production cannot be included, as there is no evidence to show how much of that was hauled after the alleged promise. Robert Owens testified that the June production at the quarry was 187.43 squares of ⅜ inch and 80.37 squares of ½ inch. According to the evidence a fair price for hauling ⅜ inch slate was $1 per square and for ½ inch $1.75

per square. If all was hauled after the alleged promise, this would come to $327.97 additional without interest. A computation shows that only $78 of this with interest added to $1,091.25 will equal the amount of the verdict. In reply to a question that the June production was not hauled by the plaintiff until after the last day of June, Robert Owens testified: "That is true, though it might be possible that he hauled some slate in June—production in the first part of June, but there is no way of ascertaining how much." We think this testimony sufficient to warrant a larger verdict than the jury brought in.

*Judgment affirmed.*