George Larson, D.D.S. v. Marilyn Candlish

Marilyn Candlish v. George Larson, D.D.S.

[480 A.2d 417]

No. 83-066

Present: Billings, C.J., Hill, Underwood, Peck and Gibson, JJ.

Opinion Filed June 15, 1984

500

*Marilyn Candlish,* pro se, Rutland, Defendant-Appellant.

**Underwood, J.** This appeal involves two small claims actions which were consolidated for hearing below. Dr. George Larson, a dentist, first brought suit against Marilyn Candlish to recover the balance due for professional services rendered to her. Subsequently, Mrs. Candlish brought an action for professional malpractice against Dr. Larson. Both claims arose from dental treatment rendered by Dr. Larson to Mrs. Candlish. Both parties appeared pro se below.

The court rendered judgment for Dr. Larson for the balance due him, rejecting Mrs. Candlish's contention that there was an accord and satisfaction. The court also rendered judgment for Dr. Larson in the malpractice action, because Mrs. Candlish failed to present any expert testimony on the key elements necessary to prevail in a malpractice action. We affirm as to both actions.

The court below made findings of fact and conclusions of law. Mrs. Candlish does not challenge any findings made below, so we will rely on the court's findings for this appeal.

On March 23, 1980, Mrs. Candlish was examined by Dr. Larson for an endodontic problem. Dr. Larson is a specialist in endodontics in the Rutland, Vermont, area, and on March 28, 1980, he performed a root canal procedure on Mrs. Candlish. At the time, she told Dr. Larson that she needed nitrous oxide gas rather than novocaine, and that this was her regular procedure for dental work. Nevertheless, Dr. Larson administered one injection of novocaine and then gave Mrs.

Candlish a small administration of nitrous oxide gas. When Mrs. Candlish complained of pain, Dr. Larson injected additional novocaine and refused to administer more gas. Dr. Larson testified that novocaine is an anesthetic, which makes an area insensitive to pain, whereas nitrous oxide gas is an analgesic, which only lessens pain. He further testified that the gas was administered in limited amounts because it is less effective in reducing pain than is novocaine.

Mrs. Candlish testified that despite use of both agents the procedure was agonizing. She also testified that Dr. Larson knew she was in severe pain but refused to give her more gas and left her from time to time to attend to other patients.

After completion of the root canal procedure, Mrs. Candlish returned home in extreme pain. She alleges that she called Dr. Larson twice that evening about the pain and was told to take two different pain relievers. She further testified that she returned to Dr. Larson's office at about 9:00 p.m. on March 28th, and that Dr. Larson admitted to her that he had packed the surgical area too tightly. According to Mrs. Candlish, he then changed the packing. Dr. Larson denied receiving any telephone calls that evening, and he denied that he performed any further procedures on Mrs. Candlish on March 28th.

Dr. Larson's charge for the root canal procedure was $255. Mrs. Candlish paid on the bill in increments until May of 1981. On May 20, 1981, she sent what she felt would be her last payment; it was a check for $12.50 and brought the total payment to $127.50. On the back of the check was a handwritten notation stating, "The original account of $255.00 (4-11-80) is PAID IN FULL." The check was endorsed with Dr. Larson's office stamp and processed for payment.

Mrs. Candlish's brief does not raise any claims of error on appeal but simply restates her version of the facts and alleges that (1) Dr. Larson violated applicable standards of care, and (2) the endorsement stamp amounted to an accord and satisfaction. We find no error.

The malpractice claim is controlled by 12 V.S.A. § 1908 and *Senesac* v. *Associates in Obstetrics & Gynecology,* 141 Vt. 310, 449 A.2d 900 (1982). Section 1908 applies to

dentists and places upon the plaintiff the burden of proving the following:

(1) The degree of knowledge or skill possessed or the degree of care ordinarily exercised by a reasonably skillful, careful, and prudent health care professional engaged in a similar practice under the same or similar circumstances whether or not within the state of Vermont.

(2) That the defendant either lacked this degree of knowledge or skill or failed to exercise this degree of care; and

(3) That as a proximate result of this lack of knowledge or skill or the failure to exercise this degree of care the plaintiff suffered injuries that would not otherwise have been incurred.

In its conclusions of law, the court noted the complete lack of evidence on accepted anesthetic procedures, and on any deviation by Dr. Larson from accepted procedures. In *Senesac, supra,* we noted that normally the burden of proof imposed by 12 V.S.A. § 1908 will be satisfied only by expert testimony. 141 Vt. at 313, 449 A.2d at 902. In the instant case, the trial court noted that "except for the unsubstantiated opinion of Mrs. Candlish, there [was] no evidence whatever that Dr. Larson failed properly to perform the endodontic procedure ...." The record bears this out.

██ We have established an exception to the rule requiring expert testimony in medical malpractice cases where the alleged violation of the standard of care is so apparent that it may be understood by a lay trier of fact without the aid of an expert. *Senesac, supra,* 141 at 313, 449 A.2d at 902 (citing *Largess* v. *Tatem,* 130 Vt. 271, 279, 291 A.2d 398, 403 (1972)). On the facts of this case, we see no such obvious deviation from accepted practices as to preclude the requirement of expert testimony. We agree with the trial court that Mrs. Candlish failed to carry her burden in the malpractice action.

In support of her claim of accord and satisfaction, Mrs. Candlish relies on *Gallagher Lumber Co.* v. *Shapiro,* 137 Vt. 139, 400 A.2d 984 (1979). *Gallagher Lumber* involved a dis-

pute over the balance due for windows purchased from plaintiff by defendant for use in defendant's home and office. There was a question as to how a certain discount was to be applied. After the dispute went on for a period of time, defendant sent plaintiff a check reflecting the amount he claimed was due. On the check he wrote, " 'all charges thru 12/31/72,' " and included a letter of explanation with the check. *Id.* at 141, 400 A.2d at 985. The plaintiff eventually cashed the check, and this Court held that there was an accord and satisfaction.

■ The key element present in *Gallagher Lumber,* but missing from the instant appeal, was a dispute as to the amount due. See *Adams* v. *B.P.C., Inc.,* 143 Vt. 308, 309–10, 466 A.2d 1170, 1171–72 (1983), and *Mobil Oil Corp.* v. *Prive,* 137 Vt. 370, 370–71, 406 A.2d 400, 400–01 (1979) (acceptance of amount tendered can operate as an accord and satisfaction only for disputed or unliquidated debt); *Curran* v. *Bray Wood Heel Co.,* 116 Vt. 21, 22–23, 68 A.2d 712, 715 (1949) (accepting less than amount alleged due on disputed claim can be an accord and satisfaction if offered in full settlement of claim). See generally 1 Am. Jur. 2d *Accord and Satisfaction* § 18. The notation on the final check specifically mentioned the total amount due of $255, but then asserted that the check constituted payment in full. In a separate note, Mrs. Candlish conceded that the last check brought the total amount paid to exactly one-half of the original amount she owed. Thus, we perceive no dispute on her part over the total amount due; quite simply, it appears that Mrs. Candlish was attempting to modify the debt unilaterally.

■■ Furthermore, for an accord and satisfaction to be complete, the party accepting the amount offered must understand that it represents payment in full when accepted. *Union Bank* v. *Jones,* 138 Vt. 115, 124, 411 A.2d 1338, 1344 (1980). The court below concluded that Dr. Larson never accepted the check as constituting payment in full, and that he still considered there to be an outstanding balance of $127.50. Dr. Larson's account statement indicates an outstanding balance of $127.50 after entering the $12.50 payment by the check of May 14, 1981. He testified that when Mrs. Candlish, in her

note accompanying the check, refused to make further payment, he had no alternative but to bring an action to recover the balance. On the evidence, Mrs. Candlish did not carry her burden of proving accord and satisfaction. Thus, the trial court was correct in concluding that there had been no accord and satisfaction.

*Affirmed.*