# Kenneth A. and Susan A. Begin v. Henry G. Richmond, M.D.

[555 A.2d 363]

No. 85-001

Present: **Allen, C.J., Peck, Gibson, Dooley and Mahady, JJ.**

Opinion Filed October 7, 1988

Motions for Reargument and for a Corrective Decision Denied November 4, 1988

*Gerald A. Harley*, Bennington, for Plaintiffs-Appellees.

*John Paul Faignant* and *William D. Cohen* of *Miller, Norton & Cleary*, Rutland, for Defendant-Appellant.

**Dooley, J.** This medical malpractice case was tried to jury in the Bennington Superior Court in 1984 and resulted in a mistrial because the jury was unable to agree on a verdict. It is here by way of interlocutory appeal by defendant from the decisions of

the trial court to deny defendant's motion for a directed verdict made during and after trial; and by way of cross-appeal of the denial of plaintiffs' motion for a directed verdict and the decision of the trial court to disallow certain elements of damages claimed by plaintiffs. We affirm the denial of defendant's directed verdict motion and dismiss plaintiffs' cross-appeal as not properly before us.

The facts of this case are not complex and are stated in the light most favorable to the plaintiffs, since we must review the ruling on the directed verdict motion made by defendant. See *Poulin* v. *Ford Motor Co.*, 147 Vt. 120, 123, 513 A.2d 1168, 1170 (1986). Plaintiffs are husband and wife who, after having two children, decided to seek medical care on a method of birth control other than the "pill." They went to defendant doctor who discussed with them the various options. The result of that office visit was a decision that defendant would perform a vasectomy on plaintiff, Kenneth Begin. Defendant scheduled the operation for the following month and had plaintiffs sign a form which specified that defendant had explained to plaintiffs the surgical procedure and the possible complications. It also specified that the chances of reversing the vasectomy had been discussed and that plaintiffs had chosen vasectomy with other forms of birth control clearly in mind. Finally, it contained information on post-operative procedures and the risks of failure as follows:

> We understood the need for ejaculation specimens to be taken to his office at eight weeks and at eight months, as well as the need to continue an alternative form of contraception until [Dr. Richmond] . . . has seen no live sperm remaining in the ejaculation specimen. We understand that there is an approximately one in two hundred chance that the vasectomy operation may not work. If live sperm are persistently found in the ejaculation specimen, the vasectomy will have to be redone. We also understand that there is a chance of live sperm reappearing even after they have disappeared from the eight week specimen. That is possible but is highly unlikely.

Based on this form and the statements of defendant, plaintiffs understood that there was no risk of failure if the eight-month specimen showed no live sperm.

Approximately a month later, defendant performed the vasectomy operation on plaintiff Kenneth Begin. Plaintiffs brought in ejaculation specimens at eight weeks and eight months after the operation. Defendant advised that no live sperm were present after eight weeks but plaintiffs should continue their birth control method. After eight months, plaintiffs returned another specimen and defendant advised that the operation was a 100% success and that Susan Begin could discontinue using birth control pills.

Approximately two and a half years later, Susan Begin became pregnant and tests showed that the vasectomy had "recanalized" so that Kenneth Begin was again ejaculating live sperm. Plaintiffs brought this action alleging that defendant was negligent in failing to warn of the possibility of recanalization after the eighth month following the operation and that they relied on defendant's statements that the operation was a total success and had discontinued other contraception methods. They sought damages for the expenses connected with the birth and rearing of the child as well as for the cost of sterilization, loss of consortium, pain and suffering connected with the pregnancy and childbirth and emotional distress.

At trial, plaintiffs offered one expert witness, a medical doctor specializing in urology, the specialty area of the defendant. He testified that Kenneth Begin's vasectomy failed because of recanalization and that the standard of care for a urologist in the position of defendant required that plaintiffs be advised that a vasectomy could recanalize at any time. He testified that the birth was caused by the recanalization and finally that defendant's actions fell below the applicable standard of care for physicians in that specialization.

Defendant has preserved here the issue of whether the above facts and testimony make out a case of medical malpractice that should have gone to the jury. He makes a three-part argument on why his directed verdict motion should have been granted:

1. The only possible cause of action made out by the above facts is for medical malpractice based on lack of informed consent.

2. The elements of an informed consent case are governed by 12 V.S.A. § 1909 and plaintiffs do not meet the elements because they failed to show that Kenneth Begin would not

have had the vasectomy operation if he knew the omitted facts.

3. Even if this case can be considered a medical malpractice action not based on informed consent, plaintiff has failed to show a connection between the malpractice and the damage by expert testimony as required by 12 V.S.A. § 1908 and this Court's decision in *Larson* v. *Candlish*, 144 Vt. 499, 480 A.2d 417 (1984).

Defendant made these arguments to the trial court, which ruled that this was not an "informed consent" case, in part because plaintiffs had not pled that theory.[1] Thus, the case was charged to the jury as a standard medical malpractice case with the elements set forth in 12 V.S.A. § 1908 and not as an informed consent case with the elements set forth in 12 V.S.A. § 1909.

The elements of medical malpractice are set out in 12 V.S.A. § 1908. Under the statute, the plaintiff in a medical malpractice case must prove three main elements:

(1) The degree of skill or knowledge possessed or the degree of care ordinarily exercised by a reasonably skillful, careful, and prudent health care professional engaged in a similar practice to the defendant under similar conditions whether within or without the state.

(2) That the defendant lacked the applicable degree of knowledge or skill or failed to exercise the applicable degree of care; and

(3) That as a proximate result of (2), the plaintiff suffered injuries that would not otherwise have been incurred.

These elements are similar to those recognized under the common law in this state. See, e.g., *Senesac* v. *Associates in Obstetrics & Gynecology*, 141 Vt. 310, 449 A.2d 900 (1982); *Domina* v. *Pratt*, 111 Vt. 166, 13 A.2d 198 (1940). Ordinarily, these elements must be proved by expert testimony. See *Larson* v. *Candlish*, 144 Vt. 499, 502, 480 A.2d 417, 418 (1984).

Defendant has not contested that where an unplanned conception occurs as a result of the negligence of a doctor, some compen-

---

[1] Following the trial, the trial court did allow plaintiffs to amend their complaint to allege lack of informed consent. That decision is not before us.

sable "injuries" can result within the meaning of 12 V.S.A. § 1908(3), although he has hotly contested what elements of damage are compensable. Such a contest would be unavailing. Almost every court that has considered a wrongful conception case has recognized that liability can exist under traditional malpractice principles. See, e.g., *Jackson* v. *Bumgardner*, 318 N.C. 172, 179 n.2, 347 S.E.2d 743, 747 n.2 (1986) (providing a survey of cases from other jurisdictions). We see no reason to deviate from this application of our malpractice law to cases such as this.

In this case, plaintiffs' expert witness offered testimony on each of the statutory elements of malpractice. He stated that the standard of care for a urologist in the position of defendant was to inform the patient that a vasectomy can recanalize at any time. He stated that the actions or omissions of the defendant, assuming the testimony of plaintiffs was believed, fell below the applicable standard of care. He testified that the pregnancy in this case was caused by recanalization.

This case is similar to those confronted by courts of other states where sufficient evidence was found to get to the jury on a malpractice claim. In *Hackworth* v. *Hart*, 474 S.W.2d 377 (Ky. 1971), the defendant doctor performed a vasectomy on the plaintiff and did one sperm count thereafter. Plaintiff's expert witness testified that three tests were standard and accepted practice and were necessary to determine the success or failure of the operation. The court held that this evidence was sufficient to get to the jury on plaintiff's malpractice claim. Similarly in *Sherlock* v. *Stillwater Clinic*, 260 N.W.2d 169 (Minn. 1977), defendant advised that a sperm count showed that the plaintiff, on whom he had performed a vasectomy, was sterile. The advice was in fact erroneous, and when plaintiff resumed sexual relations with no alternative form of contraception, his wife became pregnant. Plaintiff's action based on negligent post-operative care was upheld. See also *Jackson* v. *Bumgardner*, 318 N.C. at 182, 347 S.E.2d at 749 (wrongful conception case recognized for failure to warn that IUD had been removed).

Based on the statutory elements and the above case law, plaintiffs have made a sufficient showing to go to the jury on a medical malpractice theory. Unless the remainder of defendant's claims are valid, the court properly denied the motion for a directed verdict.

■ Defendant's main response to plaintiffs' case is that it is governed by the informed consent statute and not the general malpractice statute because the informed consent statute covers any claim based on a "failure to disseminate proper information with regard to medical procedures." Defendant misapprehends the nature of the theory of informed consent.

This Court first recognized the doctrine of informed consent in *Small v. Gifford Memorial Hospital*, 133 Vt. 552, 349 A.2d 703 (1975), as an addition to the then-existing theories on which a medical care provider could be found liable for malpractice. Chief Justice Barney explained the features of the new theory as follows:

> The essential difference is that the proposed rule makes the extent of what a patient needs to know and ought to be told in order to intelligently consent to the proposed treatment a matter resolvable by a jury without expert medical testimony. . . .
>
> Under either rule, medical testimony is essential to establish what the risks are. The new rule merely takes away from medical expertise the burden of establishing what the patient ought to be told about these risks.

*Id.* at 554-55, 349 A.2d at 705 (citations omitted).

As *Small* makes clear, the doctrine of informed consent was added to the existing ways of showing medical malpractice in order to get around the often insurmountable obstacle of producing expert testimony to show the defendant was negligent. As one commentator emphasized:

> The requirement of informed consent to medical treatment has, for at least the past two decades, been used as the cloth from which courts slowly have begun to fashion a no-fault system for compensating persons who have suffered bad results from medical treatment. Consequently, the development of the law of informed consent has been influenced at least as much by the desire to compensate accident victims for their injuries as to promote the lofty interests which the requirement of consent was orginally intended to protect.

Meisel, *The Expansion of Liability for Medical Accidents: From Negligence to Strict Liability by Way of Informed Consent*, 56 Neb. L. Rev. 51, 77 (1977). In this state, as in many others, the

Legislature codified the doctrine of informed consent in part to freeze its development well short of strict liability. See Meisel & Kabnick, *Informed Consent to Medical Treatment: An Analysis of Recent Legislation*, 41 U. Pitt. L. Rev. 407, 416-17 (1980).

The codification of informed consent is found in 12 V.S.A. § 1909. Like the common law rule announced in *Small*, a prerequisite to liability is that a reasonable patient would not have given consent to the medical procedure if he had fully known of the risks. 12 V.S.A. § 1909(c)(4). Cf. *Macey* v. *James*, 139 Vt. 270, 272, 427 A.2d 803, 804 (1981).[2] It is this prerequisite which the plaintiff does not meet in this case and which according to defendant precludes recovery.

The reason that plaintiff does not meet the requirement of § 1909(c)(4), if it applies, is that the negligence here, if any, occurred in the post-operative stage well after plaintiff had given consent to the operation. We are asked therefore to hold that no post-operative negligence involving statements or omissions, no matter how egregious, can be actionable because the "field" of failure to disseminate proper information is fully occupied and controlled by the doctrine of informed consent. The statement of the proposition demonstrates its fallacies.

As noted in *Small*, the doctrine of informed consent was intended to add to the theories of liability and eliminate proof barriers, not to restrict liability. It would be wholly anomalous to find that this new opportunity for injured persons in fact eliminated the traditional theory of liability, fully supported by expert testimony, recognized in cases such as *Hackworth* v. *Hart*, discussed above.

Nor is there any more reason to find that the theory used by the plaintiffs in this case is now invalid because the Legislature has codified informed consent. The common law is changed by statute only if the intent is shown in clear and unambiguous language. See *Langle* v. *Kurkul*, 146 Vt. 513, 516, 510 A.2d 1301, 1303 (1986); *E.B. & A.C. Whiting Co.* v. *City of Burlington*, 106 Vt. 446, 464, 175 A. 35, 44 (1934). Defendant has not demon-

---

[2] There is one difference between the common law as announced in *Macey* v. *James* and *Small* and the requirements of the statute. Under the cases, the nonconsent element is part of the plaintiff's burden. See *Macey* v. *James*, 139 Vt. at 272, 427 A.2d at 804. The statute makes nonconsent by the fully informed reasonably prudent patient an affirmative defense. 12 V.S.A. § 1909(c)(4).

strated any legislative intent to restrict the common law of medical malpractice in cases like this when it codified the doctrine of informed consent.

■ Finally, defendant argues that plaintiffs have failed to show that the negligence of defendant, if any, was the proximate cause of the birth of the child and, thus, the damages claimed. Plaintiffs' expert witness testified that the pregnancy was caused by the recanalization after the vasectomy. He further testified that he recommends that patients return periodically for sperm testing well after the operation to be sure that recanalization has not occurred. Plaintiffs testified that they discontinued alternative methods of birth control in reliance on defendant's representations that the operation was completely effective. We believe that this evidence was sufficient to discharge plaintiffs' burden under 12 V.S.A. § 1908(3).

For the reasons stated above, defendant's motion for a directed verdict was properly denied and the case was properly submitted to the jury.

■ Plaintiffs have cross-appealed from the denial of their motion for a directed verdict on liability. If we view the evidence in the light most favorable to defendant here, as we must in reviewing plaintiffs' motion, *Poulin* v. *Ford Motor Co.*, 147 Vt. at 123, 513 A.2d at 1170, we find that many of the facts that go to the medical malpractice elements set out in 12 V.S.A. § 1908 are disputed. Thus, the case was properly charged to the jury to resolve the factual disputes. There is no error in the denial of plaintiffs' motion for a directed verdict.

Plaintiffs have also attempted to cross-appeal from a ruling by the trial court made on August 6, 1984 at the opening of trial that the plaintiffs were not entitled to recover the cost of raising the child. Because the case must be retried and the trial court may take a different view of the damages question before it, there is no longer an operative "ruling" that we can review under V.R.A.P. 5(b).[3] Accordingly, it would be inappropriate for us to reach this issue at this time.[4]

---

[3] While there are similarities between the posture of the issue raised in the cross-appeal and the main issue on appeal, the essential difference is that at least one alternative resolution of the main issue would have terminated this litigation. Thus, the main issue was ripe for review.

[4] We also note that the issue was not preserved by an exception to the jury charge on damages. See V.R.C.P. 51(b). We do not address whether the cross-

*Affirmed; cross-appeal on damages dismissed; remanded for retrial.*

Relying on *Economou* v. *Economou*, 133 Vt. 418, 340 A.2d 86 (1975), defendant has moved for reargument of our decision not to address the cross-appeal issue because we are authorizing a "collateral appeal" by allowing the court at the new trial to adopt a different decision on this issue from the one adopted for the former trial. The dangers outlined in *Economou* are not present here. Sending the case to a trial court for a *new* trial is, obviously, not a continuation of a previous trial. When a new trial is granted, "the whole adjudication of the first is wiped out . . . [a]nd rulings of the court at the former trial are not binding on the court at the new trial." *Enos* v. *Owens Slate Co.*, 107 Vt. 125, 128, 176 A. 121, 122-23 (1935).

*Motion for reargument denied. Motion for a corrective decision denied.*

appeal provision of V.R.A.P. 4 would give us jurisdiction over the charge issue despite the omission.