2005 VT 119

# Paul Christman v. Gordon H. Davis, DMD and Associates in Periodontics, PLC

[889 A.2d 746]

No. 04-388

Present: Reiber, C.J., Dooley, Johnson and Skoglund, JJ., and Crawford, Supr. J., Specially Assigned

Opinion Filed October 21, 2005

*Craig Weatherly* of *Gravel and Shea*, Burlington, for Plaintiff-Appellant.

*Ritchie E. Berger* of *Dinse, Knapp & McAndrew, P.C.*, Burlington, for Defendants-Appellees.

¶ 1. **Dooley, J.** Plaintiff Paul Christman appeals a superior court order granting defendants summary judgment on his claim of medical battery. Plaintiff claims (1) that material facts are disputed, and therefore summary judgment was inappropriate; and (2) that defendant periodontist performed a surgical procedure for which plaintiff did not consent and therefore defendant committed a battery. We affirm.

¶ 2. Plaintiff consulted defendant Gordon Davis, a periodontist,[1] to treat his gum recession and root exposure. Defendant discussed procedures to obtain root coverage including a tissue graft, and plaintiff consented to this procedure. A tissue graft involves making vertical incisions around the exposed root; the incision is made to free gingival tissue and then donor tissue from the palate is grafted onto the root. After administering a local anaesthetic, defendant began the procedure and determined that instead he would perform a flap procedure. This procedure follows the same preliminary step as the graft, but after incision, the periodontist applies a protein, Emdogain, to the gum to help it adhere to the tooth, and no graft is made. After surgery, plaintiff was surprised that he did not receive a graft. He was upset to learn later that the procedure did not achieve full results and that he would need to undergo a tissue graft.

¶ 3. Plaintiff sued defendants for dental malpractice, lack of informed consent, and battery. Plaintiff eventually dismissed the malpractice and lack of informed consent claims, and proceeded solely on the battery claim. Defendants filed for summary judgment, arguing that common-law medical battery was preempted by Vermont's informed consent statute, 12 V.S.A. § 1909, and plaintiff was not battered because the flap procedure was within the bounds of plaintiff's consent. In opposition to defendants' motion, plaintiff argued that the informed consent statute did not preempt a common-law claim based on battery, and defendant's failure to notify plaintiff in advance of the flap

---

[1] Although the complaint is somewhat vague, it appears to allege that defendant Davis practices dentistry as part of Associates in Periodontics, PLC, which is also named as a defendant. The complaint states that defendant Associates "is liable for all the acts and omissions of Defendant Davis," apparently on a theory of vicarious liability because no independent acts of Associates are alleged. When we refer in the text to "defendant," the reference is to Dr. Davis. Where the reference is plural, it includes defendant Associates in Periodontics, PLC.

procedure, and obtain plaintiff's specific authorization to conduct this particular procedure, constituted a battery.

¶ 4. The trial court ruled that the common-law battery claim was not preempted by statute because the statute was intended to define medical torts based on negligence, and battery is an intentional tort. See *Wilson v. Smith*, 144 Vt. 358, 361, 477 A.2d 964, 965 (1984) (holding that intent is an element of civil battery). The court concluded, however, that defendant performed surgery on an area of the body to which plaintiff consented, and choosing to perform a less-invasive procedure did not constitute battery.

¶ 5. On review of summary judgment, we apply the same standard as the trial court and will affirm the grant of the motion if there are no issues of material fact and the prevailing party is entitled to judgment as a matter of law. V.R.C.P. 56(c)(3); *O'Donnell v. Bank of Vt.*, 166 Vt. 221, 224, 692 A.2d 1212, 1214 (1997). "[T]he party opposing summary judgment is entitled to the benefit of all reasonable doubts and inferences." *Carr v. Peerless Ins. Co.*, 168 Vt. 465, 476, 724 A.2d 454, 461 (1998).

¶ 6. Plaintiff bases his remaining claim in battery, which is an intentional act that results in harmful contact with another. Restatement (Second) of Torts § 13 (1965) [hereinafter Restatement]; *Kent v. Katz*, 146 F. Supp. 2d 450, 463 (D. Vt. 2001). In a medical context, a health care provider commits battery if the provider performs a procedure for which the patient has not given consent. *Duncan v. Scottsdale Med. Imaging, Ltd.*, 70 P.3d 435, 438-39, ¶¶ 9-11 (Ariz. 2003). Generally, consent to particular conduct, or "substantially the same conduct," bars recovery for a harmful invasion. Restatement § 892A(2)(b); *Godwin v. Danbury Eye Physicians & Surgeons, P.C.*, 757 A.2d 516, 520 (Conn. 2000) (quoting Restatement § 892A(2)(b)). Plaintiff argues that he did not give consent to perform a flap procedure and therefore defendant committed battery. Defendant responds that plaintiff's claim is preempted by statute, and further that defendant acted within the scope of plaintiff's consent.

¶ 7. At the outset, it is important to distinguish between cases involving no consent and those involving a lack of informed consent. Generally, battery occurs only when a physician performs an operation for which there was no consent. If the patient does provide consent for the procedure employed, but receives inadequate disclosures of the alternatives and foreseeable risks and benefits of the alternatives, liability must be based on lack of informed consent, and a claim of

medical malpractice in failing to provide the necessary disclosures. See *Duncan*, 70 P.3d at 439 (describing parameters of battery and informed consent); 12 V.S.A. § 1909(a)(1)-(2) (defining lack of informed consent). This difference, however, can be "slippery." D. Dobbs, The Law of Torts § 103, at 243 (2001). The California Supreme Court explained the requirements of each claim well in *Cobbs v. Grant*:

> The battery theory should be reserved for those circumstances when a doctor performs an operation to which the patient has not consented. When the patient gives permission to perform one type of treatment and the doctor performs another, the requisite element of deliberate intent to deviate from the consent given is present. However, when the patient consents to certain treatment and the doctor performs that treatment but an undisclosed inherent complication with a low probability occurs, no intentional deviation from the consent given appears; rather, the doctor in obtaining consent may have failed to meet his due care duty to disclose pertinent information. In that situation the action should be pleaded in negligence.

502 P.2d 1, 8 (Cal. 1972). This distinction is important for our resolution of both defendant's preemption argument and plaintiff's argument opposing summary judgment.

¶ 8. Defendant argues that we should not reach plaintiff's appeal issue that summary judgment was improper on the facts of this case because Vermont's informed consent statute, 12 V.S.A. § 1909, preempts plaintiff's battery claim. The Legislature has enacted in Title 12, the title on court procedure, two statutes governing medical malpractice actions. The first, 12 V.S.A. § 1908, defines "malpractice" as "professional medical negligence," and requires a plaintiff to prove that the defendant failed to exercise the degree of care of a reasonably skilled professional under the same circumstances and that this failure caused injury that would not have otherwise occurred. *Id.* § 1908(1)-(3). The second, § 1909, is entitled "Limitation of medical malpractice action based on lack of informed consent." It defines informed consent, outlines defenses to the claim, and also places an affirmative burden on the plaintiff to establish this claim through expert testimony. *Id.* § 1909. Defendant argues that "by asserting an informed consent claim in the guise of a battery claim" plaintiff has attempted "to avoid the clear and unambiguous intent of the Legislature to replace the common law with a statutory framework."

¶ 9. The main difficulty with defendant's argument is that the statutes regulate medical malpractice actions and they are defined in § 1908 as actions involving "negligence." Plaintiff complains of an intentional tort, and not of negligence. Moreover, as we have explained the difference above, plaintiff's claim is based on lack of consent and not lack of informed consent.

¶ 10. In construing a statute, we presume the Legislature intended the plain, ordinary meaning of the terms. *Swett v. Haig's, Inc.*, 164 Vt. 1, 5, 663 A.2d 930, 932 (1995). Further, we do not find a change in common-law rules unless the intent to do so is "expressed in clear and unambiguous language." *Id.* If anything, the wording of §§ 1908 and 1909 clearly and expressly states the Legislature had no intent to change the availability or elements of a claim for common-law battery.[2]

¶ 11. That intent is reinforced by our analysis in the one decision that discusses the doctrine of informed consent in medical malpractice actions, *Begin v. Richmond*, 150 Vt. 517, 555 A.2d 363 (1988). We explained in *Begin* that the informed consent doctrine was intended to expand "the existing ways of showing medical malpractice in order to get around the often insurmountable obstacle of producing expert testimony to show the defendant was negligent." *Id.* at 522, 555 A.2d at 366. The statute in turn was intended to "freeze" the development of the doctrine. *Id.* at 523, 555 A.2d at 367. We held, however, that the effect of the statute was not to eliminate a traditional theory of liability. *Id.* Defendant in this case asks us to find in § 1909 a legislative intent to eliminate the use of the tort of battery in cases involving medical care, exactly the opposite of the intent we found in *Begin*. We rejected defendant's theory in *Begin* and see no reason to depart from that holding here. *Id.* at 523, 555 A.2d at 367.

¶ 12. Defendant urges us to follow *Lugenbuhl v. Dowling*, 701 So. 2d 447, 452-53 (La. 1997), in holding that a state implied-consent statute is intended to preempt liability on a theory of battery and require that all consent-related claims be brought as medical malpractice claims. The holding of *Lugenbuhl* is based, however, on the

---

[2] Although of lesser importance, we view it as significant that these sections appear in chapter 81, entitled "Conduct of Trial," of Title 12, entitled "Court Procedure." This indicates the Legislature's intent to provide rules on burdens of proof and evidentiary requirements for existing claims, rather than to wholly displace substantive common-law theories of medical tort. See *Greenmoss Builders, Inc. v. Dun & Bradstreet, Inc.*, 149 Vt. 365, 369-70, 543 A.2d 1320, 1323-24 (1988) (considering whole statute, subject matter, and effects and consequences in its interpretation).

language of the Louisiana statute, which is quite different from the language in our statute. *Id.* at 450. Other courts have reached the same conclusion that we have with comparable statutes that use similar language. See *Blier v. Greene*, 587 S.E.2d 190, 193 (Ga. Ct. App. 2003) (stating that nonconsensual assault and battery "cannot be construed as medical or professional malpractice"); *Bundrick v. Stewart*, 114 P.3d 1204, 1208, ¶¶ 13-15 (Wash. Ct. App. 2005) (holding that medical malpractice statute did not preempt common-law battery claim). In any event, we are required to construe our statute according to our established techniques, and that construction clearly shows the statute did not preempt plaintiff's battery claim.

¶ 13. Having determined that plaintiff's battery claim is not pre-empted by statute, we consider whether defendants are entitled to summary judgment in this case, as the superior court held. In analyzing this question, we note the parties substantially disagreed as to what disclosures defendant made to plaintiff. Plaintiff's theory is, as he expressed in his affidavit, that defendant "did not discuss with me any other or different procedure" than the tissue graft procedure and plaintiff consented only to the tissue graft procedure. Defendant disputes this recitation of events.

¶ 14. Based on defendant's statement of undisputed facts and plaintiff's response to the statement, the parties are in agreement on certain key factual issues. In defendant's first statement of undisputed material facts, defendant stated that "[t]he coronally repositioned flap is a less invasive procedure," and plaintiff did not dispute that statement. In fact, plaintiff stated in his affidavit that he would not have consented to the flap procedure "because I was more interested in the likelihood of a successful outcome than I was in the degree of invasiveness of the procedure." In his second statement of undisputed material facts, defendant stated "[a] periodontist must perform the steps of a flap procedure in order to determine whether there is sufficient tissue of adequate quality to perform the graft." Although plaintiff answered that the statement "does not concern the treatment to which Plaintiff gave his consent," he added that he didn't dispute the defendant's statement "[a]s a matter of general periodontics."

¶ 15. Based on the undisputed facts in the record, plaintiff's claim is that defendant did less than he promised — that is, defendant did not go further and do the tissue graft — and that was why the procedure was unsuccessful. We agree with the trial court that plaintiff does not have a battery claim and conclude that summary judgment was properly granted for defendant.

¶ 16. The central issue is whether plaintiff consented to the procedure that was performed so that he cannot prove an essential element of battery. Effective consent must be "to the particular conduct, or to substantially the same conduct." Restatement § 892A(2)(b). Consequently, "[w]here a doctor obtains consent of the patient to perform one type of treatment and subsequently performs a substantially different treatment for which consent was not obtained, there is a clear case of battery." *Cobbs*, 502 P.2d at 7; see *Perin v. Hayne*, 210 N.W.2d 609, 618 (Iowa 1973) (accepting *Cobbs* analysis and noting that battery occurs when there is a "substantial difference" between the surgery for which plaintiff granted consent and that performed). In determining whether plaintiff gave adequate consent, we must focus on the "conduct or procedure to be performed, not its consequences." *Godwin*, 757 A.2d at 520. Consistent with our above discussion differentiating claims based on lack of consent from those based on lack of informed consent, consent is valid to bar a battery claim even if it was induced by a lack of necessary disclosure of information. See Dobbs, *supra*, § 103, at 242 ("If the surgeon's fault is that he failed to provide information that should have been provided, the plaintiff's consent holds good to bar the battery claim."). As stated, where a plaintiff consents after inadequate necessary disclosures, the claim should be one of medical malpractice under the lack-of-informed-consent line of cases. See *Duncan*, 70 P.3d at 439, ¶ 13 (adopting *Cobbs* and reasoning that cases "involving the doctor's obligation to provide information" must be brought as malpractice claims, not battery claims).

¶ 17. In essence, this is a case in which the medical professional did a less-extensive operation than that to which the patient consented, taking steps the professional would have taken in the more extensive operation. Under the elements of battery described above, courts have dismissed medical battery claims where a surgeon chooses to perform a less-extensive operation than that discussed with the patient. See *Conte v. Girard Orthopaedic Surgeons Med. Group, Inc.*, 132 Cal. Rptr. 2d 855, 860-61 (Ct. App. 2003) (concluding that where doctor decided during surgery not to repair patient's shoulder, no battery occurred because he did less than he was authorized to do); *Moser v. Stallings*, 387 N.W.2d 599, 602 (Iowa 1986) (affirming directed verdict for defendant on medical battery where plaintiff alleged that doctor failed to perform a chin implant during plastic surgery). In doing so, one court explained: "We see no policy reason to extend the law of battery to these circumstances where the treatment was within the

bounds of [the patient's] consent. . . . If doctors were subject to liability for battery in such situations, it would deter them from freely exercising their medical judgment." *Conte*, 132 Cal. Rptr. 2d at 860-61. We agree with the rationale of these decisions.

¶ 18. In holding that plaintiff has no battery claim, we are not determining whether plaintiff would have had a remedy if he could have appropriately proven the allegations in his complaint. Although we have held that defendant acted within plaintiff's consent such that plaintiff has no battery claim, we recognize that plaintiff claimed that his consent was induced by defendant's representation that he would perform the tissue graft procedure and that defendant performed the flap procedure "without even discussing it" with him. To the extent plaintiff had an actionable claim, it fell within the lack-of-informed-consent line of cases. Because plaintiff dismissed that claim we do not, however, address its merits.[3]

¶ 19. Finally, we address plaintiff's claims that disputed issues of material fact and procedural deficiencies prevent us from affirming the summary judgment decision. As we state above, we agree that material issues of disputed fact would prevent summary judgment on whether defendant disclosed the flap procedure as an alternative to the tissue graft procedure. We believe, however, that no disputed issues of material fact exist as to whether plaintiff's consent covered the flap procedure in light of plaintiff's concession that the elements of the flap procedure were necessary to the tissue graft procedure plaintiff sought.

¶ 20. Plaintiff argues that we nonetheless cannot affirm the summary judgment for defendant because defendant never claimed that he acted within the scope of plaintiff's consent when he presented his summary judgment motion below. Plaintiff's argument is accurate to a point. Defendant did not raise the scope of plaintiff's consent in his motion or memorandum, but submitted facts that supported a consent argument. As a result, plaintiff responded to those facts and stated in his memorandum:

---

[3] Plaintiff's claim for lack of informed consent would be based on the same transaction as the battery claim. *Faulkner v. Caledonia County Fair Ass'n*, 2004 VT 123, ¶ 13, 178 Vt. 51, 869 A.2d 103 (noting that "'where one act causes a number of harms to, or invades a number of different interests of the same person, there is still but one transaction'") (quoting Restatement (Second) of Judgments § 24 cmt. c (1982)). Thus, plaintiff would be barred by claim preclusion from bringing a future claim for lack of informed consent arising out of this incident.

> The extent of the consent Defendant Davis secured from Plaintiff is a disputed issue of fact, see accompanying affidavit, and Defendants' argument based on what they contend Plaintiff consented to cannot be given any consideration.

Apparently, plaintiff viewed the basis of defendant's motion as defendant's reliance upon plaintiff's consent for the procedure. The trial court found the issue was adequately joined and grounded its decision on plaintiff's consent for defendant's action. In his brief to this Court, plaintiff did not argue that the superior court improperly went beyond the scope of the motion with its decision. Instead, plaintiff raised that argument for the first time in his reply brief in response to defendant's argument that the record supported the superior court judgment.

¶ 21. We conclude that the issue of the scope of plaintiff's consent was properly before the superior court even if placed there by plaintiff. In any event, we need not consider an argument raised for the first time in a reply brief. See *Robertson v. Mylan Labs., Inc.*, 2004 VT 15, ¶ 1 n.2, 176 Vt. 356, 848 A.2d 310.

*Affirmed.*