2013 VT 33

## Kelley S. O'Brien v. Catherine Synnott and Fletcher Allen Health Care

[72 A.3d 331]

No. 12-164

Present: **Reiber, C.J., Dooley, Skoglund, Burgess and Robinson, JJ.**

Opinion Filed May 17, 2013

---

*Kelley S. O'Brien*, Pro Se, Beattyville, Kentucky, Plaintiff-Appellant.

*Nicole Andreson* and *Angela R. Clark* of *Dinse, Knapp & McAndreu, P.C.*, Burlington, for Defendants-Appellees.

¶ 1. **Robinson, J.** Plaintiff Kelley S. O'Brien sued defendants Fletcher Allen Health Care (FAHC) and FAHC nurse Catherine Synnott for drawing his blood at the request of law enforcement officers and without his consent, and for injuries he suffered when allegedly assaulted by police officers after defendants negligently allowed those officers unrestricted access to him in the hospital while he was recovering from surgery. The trial court granted defendants summary judgment, concluding that it was not reasonably foreseeable that the police officers would harm plaintiff if allowed unsupervised access, and that nurse had plaintiff's apparent consent to draw the blood. We affirm in part and reverse in part.

¶ 2. The relevant facts are as follows. In February 2009, outside a convenience store, a police officer on foot tried to stop plaintiff who was reportedly driving erratically. Plaintiff allegedly refused to stop driving and drove into the officer. The officer fired shots into plaintiff's car, hitting his lower back. Plaintiff drove off, and, after his car came to a stop, police took him to FAHC for medical treatment.[1] What happened next is very much in dispute.

¶ 3. Because the trial court dismissed plaintiff's case on summary judgment, we consider the disputed evidence about what happened next in the light most favorable to plaintiff, affording him "the benefit of all reasonable doubts and inferences." *White v. Harris*, 2011 VT 115, ¶ 6, 190 Vt. 647, 36 A.3d 203 (mem.) (quotation omitted). Although plaintiff's account of the relevant events at FAHC is disputed, our recitation reflects his factual claims.[2]

---

[1] Like the trial court, we include these facts and uncontroverted allegations of the underlying criminal case to provide a context and do not rely on them in reaching our decision. Without specifying which ones, plaintiff claims that some of the documents submitted by defendants related to his criminal case are either irrelevant or not part of the record on appeal. All of the documents included in defendants' printed case were also submitted to the trial court without objection. Therefore, they are part of the record on appeal.

[2] Plaintiff's own claims have not been entirely consistent; we view any inconsistencies in his testimony in the light most favorable to his claims.

¶ 4. Plaintiff testified by affidavit that a law enforcement officer requested an evidentiary sample of his blood in the emergency room, and plaintiff refused. The officer said he would get a warrant. Plaintiff was taken from the emergency room for emergency surgery. While he was in the post-anesthesia care unit (PACU) recovering from the surgery, his nurse left the area, allowing a group of police officers the opportunity to access plaintiff's room. The officers asked plaintiff for a blood sample. When plaintiff refused, they held him down, covered his mouth, and tried, unsuccessfully, to take his blood by force.

¶ 5. Subsequently, nurse returned and drew plaintiff's blood. Although she presented herself in her capacity as plaintiff's medical provider, nurse actually drew blood for the nonmedical purpose of providing a sample of plaintiff's blood to the police. Nurse did not disclose to plaintiff her purpose for drawing blood, or that the blood draw was not in connection with medical treatment for plaintiff's benefit. Plaintiff did not object to her drawing the blood, but also did not consent to her drawing his blood for a nonmedical purpose.

¶ 6. On the basis of the above facts, plaintiff sued defendants. Both parties filed motions for summary judgment. Defendants argued that they were entitled to summary judgment because plaintiff failed to support his claim of medical malpractice with expert testimony and because 23 V.S.A. § 1202 provided consent for the blood draw.[3] In response, plaintiff argued that he did not need expert testimony to support a battery claim and that § 1202 applies only to law enforcement officers.

¶ 7. The court agreed with plaintiff that an expert was not required because plaintiff alleged battery and negligence in allowing the police officers to assault him, and not medical malpractice. As to § 1202, the court concluded that there were insufficient facts to determine whether the statute applied. Nonetheless, the court held that plaintiff's battery claim failed as a matter of law because

---

[3] Section 1202(a)(2) provides that if breath-testing equipment is not available or a person is unable to provide a sufficient sample, or if an officer deems that a person is incapable of making a decision, the person is deemed to have consented to the taking of an evidentiary blood sample. Defendants' position is that nurse drew the blood pursuant to a request by law enforcement when plaintiff was asleep. Accordingly, defendants do not claim that nurse disclosed the purpose of the blood draw to plaintiff or that he provided express consent; they contend that plaintiff was asleep at the time.

plaintiff's actions in failing to object to the blood draw provided apparent consent. Because nurse was acting on the instructions of law enforcement officers and had "no reason to believe that their request was improper," she was "justified in acting on the understanding that consent was present when she drew the blood."

¶ 8. The court also concluded that plaintiff's negligence claim failed. Although the court found that a special relation existed between defendants and plaintiff such that defendants had a duty to protect plaintiff from harm from third parties, the court held that defendants' duty did not extend to protecting plaintiff against a sudden attack from third parties that defendants had no reason to anticipate. In this case, there was no evidence suggesting that nurse had any reason to know that four officers might suddenly throw themselves on plaintiff as alleged. Because the alleged assault by the officers was not reasonably foreseeable to nurse, she violated no duty in failing to protect plaintiff from them. The court accordingly granted defendants' motion for summary judgment.[4]

¶ 9. On appeal, this Court reviews motions for summary judgment "de novo, using the same standard of review as the trial court." *White*, 2011 VT 115, ¶ 6. Summary judgment is appropriate where there is no genuine issue of material fact and a party is entitled to judgment as a matter of law. V.R.C.P. 56(a). A dispute over material facts precludes summary judgment. "The issue is material only if it might affect the outcome." *N. Sec. Ins. Co. v. Rossitto*, 171 Vt. 580, 581, 762 A.2d 861, 863 (2000) (mem.).

■■ ¶ 10. As noted above, the facts here are unquestionably in dispute. The question, then, is whether, considering the facts in the light most favorable to plaintiff, defendants are entitled to judgment as a matter of law. We first consider plaintiff's claim that defendants negligently failed to protect him from the police officers. Defendants' duty to protect plaintiff does not extend to protecting him from attacks by third parties that are not reasonably foreseeable. See *Endres v. Endres*, 2008 VT 124, ¶ 13, 185 Vt. 63, 968 A.2d 336 ("Whether a defendant is negligent depends on whether his or her action was objectively reasonable under the

---

[4] The court also denied plaintiff's cross-motion for summary judgment. On appeal, plaintiff does not challenge the trial court's denial of his summary judgment motion, and we do not directly address that ruling here.

circumstances; that is, the question is whether the actor either does foresee an unreasonable risk of injury, or could have foreseen it if he conducted himself as a reasonably prudent person." (quotation omitted)); see also Restatement (Second) of Torts § 314A cmt. e (1965) (stating that defendant is "not required to take precautions against a sudden attack from a third person which [the defendant] has no reason to anticipate"); *id.* § 320 (explaining that actor has duty to control conduct of third persons only when actor "knows or should know of the necessity and opportunity for exercising such control").

¶ 11. We agree with the trial court that plaintiff has not identified any evidence that defendants should have anticipated that the police officers would attack plaintiff if left unsupervised. As the trial court noted, plaintiff was in police custody at the time, so some police presence around him was to be expected. On this record, we agree with the trial court that defendants cannot be held liable for negligence on account of nurse's alleged conduct in leaving plaintiff alone with law enforcement officers even viewing the evidence most favorably to plaintiff.[5]

¶ 12. With respect to the battery claim, we must assume, consistent with plaintiff's affidavit testimony, that plaintiff was awake and alert at the time of the blood draw, and that at no time was he told that the blood was being drawn at law enforcement's request rather than for medical purposes. In the medical context, a provider commits battery if the provider performs a procedure without the patient's consent, and a plaintiff who has consented to a procedure cannot recover for an invasion. *Christman v. Davis*, 2005 VT 119, ¶ 6, 179 Vt. 99, 889 A.2d 746.

¶ 13. Defendants make two arguments in support of the trial court's summary judgment ruling on the battery claim. First,

---

[5] In plaintiff's statement of undisputed facts submitted on March 7, 2012, plaintiff alleged that nurse Synnott had observed the officers trying to hold down plaintiff to retrieve a blood sample. Plaintiff did not support the assertion with any citation to the record. In fact, the assertion is contrary to nurse Synnott's testimony that she did not see physical contact between plaintiff and the officers and plaintiff's own prior statement that the officers had unsupervised contact with him. The party opposing summary judgment may not rest on mere assertions to rebut credible evidence. See *Gore v. Green Mountain Lakes, Inc.*, 140 Vt. 262, 266, 438 A.2d 373, 375 (1981). Thus, the court properly disregarded plaintiff's unsupported assertion, and considered the fact that he was unsupervised when allegedly assaulted as undisputed for purposes of the motion. V.R.C.P. 56(e).

defendants argue that even if, contrary to defendants' position, plaintiff was conscious during the blood draw, by failing to object to nurse's actions he provided "apparent consent." "If words or conduct are reasonably understood by another to be intended as consent, they constitute apparent consent and are as effective as consent in fact." Restatement (Second) of Torts § 892(2) (1979). Defendants contend that because the police had requested an evidentiary blood sample, because nurse used a special procedure for labeling the blood sample for the police, and because plaintiff did not object when she went to draw the blood, even assuming plaintiff's version of the facts, nurse reasonably understood plaintiff to have consented. Defendants note that there was no evidence that nurse was aware of plaintiff's prior refusals.

¶ 14. This argument fails because it relies on inferences in defendants' favor that we cannot draw at the summary judgment stage. In particular, defendants ask us to infer that because the police asked nurse to draw the blood, and because she had a special collection kit for the blood draw, plaintiff understood that she was drawing the blood for the nonmedical purpose of providing a sample to the police when he did not object to her actions. In the face of plaintiff's testimony that nurse did not inform him of the purpose of the blood draw and that he did not know that nurse was drawing the blood for nonmedical purposes, we cannot indulge the inference that his failure to object to her withdrawing the blood amounted to apparent consent. A factfinder may ultimately draw the same inference as the trial court did here, but may also reach the opposite conclusion. As we have said in the past, "Since the resolution of this case must involve inferences to be drawn by the factfinder, the inability to do so leaves the record fatally incomplete." *Ejnes v. Carinthia Trailside Assocs.*, 153 Vt. 355, 358, 571 A.2d 49, 51 (1989).

¶ 15. In the absence of undisputed evidence that plaintiff knew or should have understood the nonmedical purpose of the blood draw, the fact that he did not object does not support the conclusion that his conduct amounted to apparent consent. See Restatement (Second) of Torts § 892B(2) (1979) (explaining that consent is not valid if induced by "substantial mistake concerning the nature of the invasion").

¶ 16. Nor was plaintiff's consent to the blood draw itself, without knowledge that it was not for a medical purpose, sufficient

to defeat his battery claim. In *Christman*, we recognized that consent to a specific procedure may encompass different but substantially the same (or less invasive) procedures. 2005 VT 119, ¶ 17. This is not a scope-of-consent case. The only undisputed consent apparent here is plaintiff's consent to medical treatment generally. Plaintiff's broad consent to medical treatment is different in kind from any purported consent to a blood draw for nonmedical, law-enforcement purposes.[6]

¶ 17. Defendants' second argument in support of the trial court's ruling on the battery claim is that defendants should be immune from civil liability for battery when they draw a blood sample from an individual suspected of driving under the influence at the request of law enforcement officers without regard to whether the individual consents to the blood draw.

¶ 18. At common law, as noted above, a medical provider who performs an unconsented-to procedure on a patient may be liable for battery. *Id.* ¶ 6. The rule for which defendants advocate represents a departure from this general rule. The policy rationales supporting a departure are substantial: specified medical personnel are the *only* people authorized by statute to draw evidentiary blood samples. 23 V.S.A. § 1203(b). To the extent that fear of civil liability for battery makes such medical professionals unwilling to draw blood in response to a legitimate request from law enforcement, it may compromise law enforcement and public safety. On the other hand, the consequences of interposing the state between medical providers and patients, abrogating providers' own duty to their patients to refrain from unconsented-to medical procedures, are also disagreeable.

¶ 19. In the face of these competing policy considerations, we would look to the Legislature to define the contours of any exceptions to the ordinary common law obligations of medical

---

[6] In *Christman*, we distinguished between claims against medical providers based on lack of consent, and claims based on lack of informed consent. 2005 VT 119, ¶ 7. The former cases are limited to those in which "a physician performs an operation for which there was no consent." *Id.* In the latter category — informed-consent cases — "the patient does provide consent for the procedure employed, but receives inadequate disclosures of the alternatives and foreseeable risks and benefits of the alternatives." *Id.* These latter cases are medical negligence cases rather than battery cases, in which the patient's consent to the procedure operates as a bar to the battery claim. This is not an informed consent case, as plaintiff is not challenging the adequacy of nurse's advice concerning the risks or side effects of the procedure.

provider to patient. See *Reed v. Glynn*, 168 Vt. 504, 508, 724 A.2d 464, 466 (1998) ("In this area of conflicting considerations, the choices are fundamentally for the Legislature.").

¶ 20. We note that the Legislature *has* expressly limited the liability of medical providers in certain circumstances related to blood draws and individuals suspected of driving under the influence, neither of which is applicable here. See 23 V.S.A. § 1203a(f) (limiting liability of medical personnel drawing blood pursuant to request for independent blood test by person who has been tested); *id.* § 1203b(b) (immunizing from civil and criminal liability emergency room personnel who make good-faith reports pursuant to obligation to report blood alcohol concentrations in excess of legal limit when treating individuals injured in motor vehicle accidents).

■ ¶ 21. However, in contrast to some other states, our Legislature has *not* expressly required medical personnel to comply with law enforcement requests to draw blood, and has not immunized those providers from liability for complying. See, e.g., 625 Ill. Comp. Stat. Ann. 5/§ 11-500.1(a) (West 2012) ("A person authorized under this Article to withdraw blood or collect urine shall not be civilly liable for damages when the person, in good faith, withdraws blood or collects urine . . . upon the request of a law enforcement officer, unless the act is performed in a willful and wanton manner."); 75 Pa. Cons. Stat. Ann. § 3755 (West 2004) (providing that hospital personnel shall draw blood or urine sample for police in specified circumstances and establishing civil and criminal immunity from liability for hospital personnel who accordingly draw blood or urine samples and provide them to law enforcement).

¶ 22. Given that the Legislature has not indicated an intent to limit the liability of medical personnel who draw blood at the request of law enforcement, we conclude that, at least in a situation as alleged by plaintiff here in which a patient is conscious and the authority to draw blood depends upon actual, as opposed to statutorily implied, consent the police officers' request

does not protect defendants from liability for drawing the blood without plaintiff's consent.[7]

*Affirmed as to the portion of the court's order granting summary judgment to defendants on plaintiff's negligence claim. Reversed as to the portion of the order granting summary judgment on the battery claim. The matter is remanded for further proceedings consistent with this decision.*

---

[7] Because we adopt plaintiff's factual claims for the purpose of this appeal, including his assertion that he was conscious and alert at the time of the blood draw, we do not address the applicability and effect on defendants' potential liability of the implied consent statute. 23 V.S.A. § 1202. Nor do we reach the question of whether defendants violated any separate legal duty to plaintiff by providing a sample of his blood, once drawn, to law enforcement.