**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

**DIVISION II**

| | |
|---|---|
| BARBARA SHULTZ, a single individual, | No. 59807-8-II |
| Appellant, | |
| v. | |
| PEACE HEALTH/SOUTHWEST WASHINGTON REGIONAL SURGERY CENTER, a Washington company; and DR. ALLEN GABRIEL, a single individual, | UNPUBLISHED OPINION |
| Respondents. | |

GLASGOW, J.—Barbara Shultz underwent surgery to remove her breast implants and the surrounding "capsule" of tissue, known as a capsulectomy. After the surgery, Shultz continued to feel severe pain and had other symptoms. She then underwent another surgery, during which a different surgeon found and removed remaining pieces of capsule tissue. Shultz's pain was significantly reduced after the second surgery.

Shultz sued the original surgeon, Dr. Allen Gabriel, and Peace Health claiming only negligence in the form of medical malpractice. Following discovery, Peace Health moved for summary judgment on the grounds that Shultz could not support her negligence claim because she had not obtained an expert witness to address the standard of care or causation. Shultz filed a motion to continue the summary judgment hearing so that she could get a signed declaration from or depose the second surgeon. Shultz also responded by arguing a new claim that Dr. Gabriel had

performed a partial capsulectomy, rather than a full capsulectomy, without her consent. The trial court denied the motion to continue and granted the defendants' motion for summary judgment.

We affirm.

FACTS

Because this case involves review of a dismissal on summary judgment, we recite the facts in the light most favorable to the nonmoving party, Shultz.

In 1995 Shultz had implants placed into her breasts. According to her complaint, by 2018 Shultz had developed contractures, breast pain, and other medical complications, and she decided to have her implants removed. Also according to her complaint, Shultz decided to have a capsulectomy, a surgery that would remove the implants and the capsule of tissue surrounding them. Prior to the surgery, Shultz signed a consent form agreeing to removal of her breast implants and a capsulectomy. By signing the form, Shultz acknowledged that "the results [of the treatment] cannot be guaranteed" and that "unforeseen situations may arise that require urgent additional or different procedures than those planned." Clerk's Papers (CP) at 76. Shultz also acknowledged that surgery includes a general risk of "damage to the surrounding tissues, vessels, nerves or organs." *Id.*

Dr. Gabriel performed the surgery. According to her complaint, afterwards Shultz experienced burning pain in her chest and breasts when she moved her arms. Shultz had not experienced this burning pain prior to the removal surgery. Shultz's left breast became infected and developed a rash, and her face would become flushed at times for no apparent reason. Wearing a bra became painful. Shultz consulted a chiropractor, massage therapist, and hormone specialist,

but her pain persisted. Dr. Jae Chun, a plastic surgeon, agreed to perform an exploratory surgery. During this second surgery, Dr. Chun found and removed remaining fragments of capsule tissue.

Shultz then sued Peace Health and Dr. Gabriel (collectively Peace Health) on a theory of negligence in the form of medical malpractice. This was the sole theory of recovery alleged in Shultz's complaint. Shultz alleged that Dr. Gabriel failed to meet the standard of care when he did not remove all of the capsule tissue surrounding her implants and that this failure was the proximate cause of her injuries. Specifically, Shultz alleged that Dr. Gabriel's failure to fully remove the capsule tissue from her breasts caused her "pain, disfigurement, allergies, discomfort, and an infection," among other injuries. CP at 15.

More than a year after the complaint was filed and after discovery, Peace Health filed a motion for summary judgment arguing that Shultz had not produced expert testimony establishing the relevant standard of care and causation to support her negligence claim. Shultz responded by asserting for the first time that Dr. Gabriel performed a surgery to which she did not consent. Specifically, Shultz argued that she did not consent to a "partial capsulectomy." CP at 31. Shultz submitted a declaration stating that Dr. Gabriel had specifically agreed to completely remove the capsule tissue surrounding her implants, that he had not completely removed the capsule tissue, and that once the remaining fragments of tissue were removed, her pain improved. Shultz also submitted an unsigned declaration from her attorney purporting to authenticate an attached postoperative report from Dr. Gabriel that read, "The total capsulectomy was performed with a textured silicone implant in a near [e]n bloc fashion. This was then removed." CP at 28.

In its reply, Peace Health contended that it was entitled to summary judgment as a matter of law because Shultz had not provided expert testimony to support her allegation that the failure

to fully remove the capsule tissue caused her harm, a necessary element of both a negligence claim and a claim of lack of consent.

On the same day Shultz filed her brief in opposition to summary judgment, Shultz also filed a CR 56(f) motion to continue the summary judgment hearing "as needed to obtain signatures on the attached declaration [of Dr. Chun]." CP at 32. The proposed declaration stated in relevant part, "During my procedure I found and removed what was more probably than not residual capsule from the previous procedure," and "[a]fter my procedure the patient's pain complaints improved, making it more probable than not that the residual capsules were the source of her pain complaints." CP at 36. The proposed declaration did not contain facts to support designation of Dr. Chun as an expert, nor did it address the standard of care for capsulectomies, nor did it address the cause of Shultz's other alleged symptoms and injuries listed in her complaint. The record shows that counsel did not ask Dr. Chun to sign the declaration until just before the response to the motion for summary judgment was due.

At the summary judgment hearing, Peace Health explained that Shultz had originally asserted a medical malpractice claim and did not raise an informed consent claim until her response to Peace Health's summary judgment motion. Peace Health contended that summary judgment was appropriate for both claims because Shultz did not offer expert witness testimony to support causation, for example.

Shultz clarified that her position was not that her consent was based on inadequate information, but that the scope of her consent did not include partial capsulectomy rather than complete capsulectomy. In rebuttal, Peace Health emphasized that health care performed absent consent, or medical battery, was "a theory we haven't heard before in the case." Rep. of Proc. (RP)

at 11. Peace Health then reiterated that expert testimony is required to establish causation regardless.

With regard to Shultz's request for a continuance, Shultz's counsel made a slightly different oral motion, asking for additional time to subpoena and depose Dr. Chun because his medical malpractice insurance company had advised him not to sign the declaration. Shultz contended that the deposition could be scheduled without disrupting the trial schedule. The trial court asked whether the deposition would be to "essentially, confirm what is in the declaration." RP at 13. Shultz's counsel responded, "That's exactly right." *Id.* Peace Health asserted, "This case has been pending for 16 months. There was plenty of time for plaintiff to retain a necessary expert for either a medical malpractice claim . . . or an informed consent claim." RP at 6. Shultz did not explain why she had not taken steps to obtain expert testimony, a declaration from Dr. Chun, or a deposition of Dr. Chun earlier.

The trial court granted Peace Health's motion for summary judgment and dismissed the case. Our record does not show that the trial court specifically addressed the CR 56(f) motion, but its summary judgment dismissal indicates it denied the motion to continue for further discovery.

Shultz appeals. Her assignments of error and issues challenge only the denial of Shultz's CR 56(f) motion and the summary judgment dismissal of the claim that Dr. Gabriel "performed care to which [Shultz] did not consent." Br. of Appellant at 3. Apart from appealing the denial of her CR 56(f) motion, Shultz does not challenge the summary judgment dismissal of her negligence claim.

ANALYSIS

I. CONTINUANCE UNDER CR 56(f)

Shultz argues that the trial court abused its discretion by denying her CR 56(f) motion to continue to allow time for Shultz to depose Dr. Chun in order to get him to confirm the truth of the contents of the proposed, unsigned declaration. We disagree.

CR 56(f) allows a trial court to continue a motion for summary judgment to allow time for further discovery. We review the trial court's decision to deny a CR 56(f) motion to continue for abuse of discretion. *Pitzer v. Union Bank of Cal.*, 141 Wn.2d 539, 556, 9 P.3d 805 (2000). It is not an abuse of discretion to deny a CR 56(f) motion when "'(1) the requesting party does not offer a good reason for the delay in obtaining the desired evidence; (2) the requesting party does not state what evidence would be established through the additional discovery; or (3) the desired evidence will not raise a genuine issue of material fact.'" *Id.* (internal quotation marks omitted) (quoting *Tellevik v. 31641 W. Rutherford St.*, 120 Wn.2d 68, 90, 838 P.2d 111 (1992)).

Shultz argues that the trial court abused its discretion when it denied her motion to continue because the motion was timely, and the delay in obtaining the affidavit could be explained by the fact that Dr. Chun's malpractice provider advised him not to sign the declaration that Shultz proposed to him. Shultz did not offer any reason why she did not seek a declaration from Dr. Chun until just before the filing deadline for her summary judgment response. And even if Shultz was given time to depose Dr. Chun, his anticipated testimony, which the trial court confirmed consisted of facts listed in the unsigned proposed declaration, would not create a genuine issue of material fact as to whether Shultz consented to the surgery performed by Dr. Gabriel. Dr. Chun was not present or involved in any way with the first surgery.

Moreover, even if Shultz hoped to obtain evidence to support her negligence claim, the anticipated testimony would not support designation of Dr. Chun as an expert, nor would it establish the standard of care for capsulectomies, nor would it address the cause of all of but one of Shultz's alleged symptoms and injuries listed in her complaint. Because the desired evidence would not create the genuine issue of material fact necessary for Shultz's claims to survive summary judgment, the trial court did not abuse its discretion by denying Shultz's CR 56(f) motion.

## II. SUMMARY JUDGMENT DISMISSAL

A.  Summary Judgment Standard

We review summary judgment rulings de novo, viewing the facts in the light most favorable to the nonmoving party. *Davies v. MultiCare Health Sys.*, 199 Wn.2d 608, 616, 510 P.3d 346 (2022). Summary judgment is properly granted if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c). We consider only the evidence that was brought to the trial court's attention. RAP 9.12.

The initial burden lies with the moving party to show there is no genuine issue of material fact. *Zonnebloem, LLC v. Blue Bay Holdings, LLC*, 200 Wn. App. 178, 183, 401 P.3d 468 (2017). After the moving party has shown an absence of evidence supporting an element of their opponent's case, "the burden shifts to the nonmoving party to set forth specific facts that rebut the moving party's contentions and show a genuine issue of material fact." *Id.*

To rebut the moving party's contentions, the nonmoving party's response must be based on "personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." CR 56(e);

*Lane v. Harborview Med. Ctr.*, 154 Wn. App. 279, 286, 227 P.3d 297 (2010). Conclusory statements, speculation, and argumentative assertions are insufficient to create a genuine issue of material fact. *Greenhalgh v. Dep't of Corrs.*, 160 Wn. App. 706, 714, 248 P.3d 150 (2011). We cannot consider assertions contained only in unsigned declarations when considering a motion for summary judgment. *Harris v. Ski Park Farms, Inc.*, 120 Wn.2d 727, 740 n.49, 844 P.2d 1006 (1993). A genuine issue of material fact exists where the evidence would allow a reasonable jury to return a verdict in favor of the nonmoving party. *Zonnebloem*, 200 Wn. App. at 182-83.

B.      Dismissal of Shultz's Medical Battery Claim on Summary Judgment

The parties refer to Shultz's claim asserting lack of consent as a claim of medical battery. "Battery" is "an intentional harmful or offensive bodily contact with another person." *Reagan v. Newton*, 7 Wn. App. 2d 781, 800, 436 P.3d 411 (2019). Consent is a defense to battery. *Id.* Medical battery occurs when a medical provider performs a procedure without the patient's consent. *See id.* at 801. A patient may communicate effective limitations on her consent. *Id.*

Shultz argues that the trial court erred when it granted Peace Health's motion for summary judgment because Shultz's declaration created a genuine issue of material fact as to her lack of consent. Shultz contends her declaration established that she received care to which she did not consent and that this care caused her harm. Shultz asserts that while she consented to a surgery that would remove her implants and the surrounding capsules, she did not consent to a surgery that left some of the capsules in place.

Peace Health responds that summary judgment was proper because Shultz's medical battery claim was not properly alleged in her complaint. And, Peace Health contends, even if the medical battery claim were properly asserted, Shultz's medical battery claim fails because it is

8

undisputed that Shultz signed a consent form that plainly gave consent for the capsulectomy. Peace Health argues that Shultz is really complaining that the surgery was unsuccessful, but the consent form also contained language acknowledging that the procedure might not work.

Assuming without deciding that Shultz's medical battery claim is properly before us, we conclude that the trial court did not err when it granted Peace Health's motion for summary judgment because it is undisputed that Shultz consented to the capsulectomy. And Shultz's assertion that she did not consent to an incomplete or unsuccessful capsulectomy is contrary to the plain language of her written consent. Thus, the medical battery claim fails as a matter of law.

Shultz relies on *Bundrick v. Stewart*, 128 Wn. App. 11, 114 P.3d 1204 (2005) to support her argument that "catch all" language in a consent form does not necessitate summary judgment on a medical battery claim where the plaintiff alleges a complete lack of consent to the surgery. In *Bundrick*, the patient testified that prior to the operation she obtained the surgeon's express assurance that the resident would not participate in the operation. *Id.* at 19. The appellate court held that summary judgment on the patient's medical battery claim was improper because this testimony created a genuine issue of material fact as to whether she communicated this limitation on her consent, regardless of the broad language in her written consent form. *Id.*

Schultz contends that her consent, like Bundrick's, was limited. Shultz essentially argues that she did not consent to the bodily contact that occurred, here a partial capsulectomy, because Dr. Gabriel removed less tissue than she had hoped. In other words, she did not receive as much bodily contact as she had hoped for. But Shultz consented to the removal of her breast implants and a capsulectomy. She also consented to related necessary procedures. Other jurisdictions have concluded that a surgery is within the scope of a patient's consent where a medical professional

9

performed a less-extensive surgery than that to which the patient consented. *See Christman v. Davis*, 2005 VT 119, 179 Vt. 99, 889 A.2d 746, 752; *Conte v. Girard Orthopaedic Surgeons Med. Grp., Inc.*, 107 Cal. App. 4th 1260, 132 Cal. Rptr. 2d 855, 860-61 (2003). These courts reasoned that holding otherwise would deter medical professionals from freely exercising their medical judgment. *Conte*, 132 Cal. Rptr. 2d at 860-61; *Christman*, 889 A.2d at 752. We agree with this reasoning. Of course, other claims may be available where the surgery performed is less extensive than the surgery the patient agreed to, but a medical battery claim is not available as a matter of law if a patient consented to a more extensive surgery than what occurred.

Here, partial removal of the capsule tissue is necessarily included in a complete capsulectomy. Thus, Shultz's consent to receive a partial capsulectomy was necessarily included in her broader consent to receive a complete capsulectomy and any necessary, related procedures as a matter of law.[1]

Unlike in *Bundrick,* Shultz did not present evidence that she communicated any limitation on her consent outside of her written consent form. Nothing in Shultz's declaration contradicts her consent form. Shultz agrees that she consented to complete removal of her breast implants and the surrounding capsule of tissue. Shultz does not allege anywhere in the record that she told Dr. Gabriel not to perform the surgery if he could not entirely remove the capsule. And Shultz acknowledged in writing that "the results cannot be guaranteed." CP at 76. Thus, the scope of

---

[1] Moreover, to the extent Shultz relies on the postoperative report to assert she received less than a full capsulectomy, that evidence was not authenticated with a signed declaration in our record, so we decline to consider it.

Shultz's presurgical consent is undisputed and Shultz has not demonstrated a genuine issue of material fact to support her claim that she received a surgery she did not consent to.

Because we conclude there was no genuine issue of material fact with regard to consent, we need not address Shultz's separate argument that her declaration created a genuine issue of material fact with regard to causation.[2]

## CONCLUSION

We conclude that the trial court did not err when it denied Shultz's CR 56(f) motion to continue and granted Peace Health's motion for summary judgment. Accordingly, we affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

GLASGOW, J.

We concur:

MAXA, P.J.

LEE, J.

---

[2] Shultz does not argue on appeal that the trial court improperly dismissed her negligence–medical malpractice claim.