Manchester CP v. A&A Restaurant, Inc., No. 235-7-14 Bncv (Valente, J., March 4, 2016)
[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

STATE OF VERMONT

| | |
|---|---|
| SUPERIOR COURT | CIVIL DIVISION |
| Bennington Unit | Docket No. 235-7-14 Bncv |

| Manchester CP vs. A & A Restaurant Inc. et al |
|---|

### ENTRY REGARDING MOTION

Count 1, Breach of Contract (235-7-14 Bncv)
Count 2, Breach of Contract (235-7-14 Bncv)
Count 3, Breach of Contract (235-7-14 Bncv)
Count 4, Breach of Contract (235-7-14 Bncv)
Count 5, Breach of Contract (235-7-14 Bncv)
Count 6, Breach of Contract (235-7-14 Bncv)
Count 7, Breach of Contract (235-7-14 Bncv)
Count 8, Breach of Contract (235-7-14 Bncv)

Title:        Motion for Summary Judgment (Motion 12)
Filer:        Manchester CP
Attorney:    Patrick J. Bernal
Filed Date:   November 23, 2015

Response filed on 01/11/2016 by Attorney Lloyd J. Weinstein for Defendant Saronis, LLC
Response filed on 01/14/2016 by Attorney Patrick J. Bernal for Plaintiff Manchester CP

**The motion is GRANTED.**

#### Opinion

This is a contract and corporate liability case. Plaintiff/Counterclaim Defendant Manchester CP, LLC (Counterclaim Defendant or Manchester CP) has moved for summary judgment regarding Defendant/Counterclaim Plaintiffs A & A Restaurant, Inc.'s and Argirios Konstantinou's counterclaims for anticipatory repudiation, constructive eviction, breach of contract, (Counterclaims 1-3) as well as Mr. Konstantinou's counterclaim for intentional infliction of emotional distress (Counterclaim 4). For the reasons set forth below, the motion is GRANTED as to Counterclaims 1-4.

*Background*[1]

---

[1] The following background is taken in the light most favorable to A & A and Mr. Konstantinou as the non-moving parties. The court acknowledges that Manchester CP disputes many of Mr. Konstantinou's assertions regarding statements made by its agents.

1

Argirios Konstantinou operated the Manchester Pizza House restaurant in the Price Chopper Plaza at 263 Depot Street in Manchester, Vermont for approximately thirty years. Eventually, he formed A & A Restaurant, Inc. (A & A) and became its president. In 2009, A & A entered into a lease agreement with Manchester Shopping Center, LLC (MSC)[2] commencing on January 1, 2010, and ending December 31, 2024 for the same space in the shopping center. Mr. Konstantinou personally guaranteed payment and performance under the lease.

In June 2013, Defendant Saronis LLC, which is owned by Mr. Konstantinou and his wife, purchased the old Friendly's building at 351 Depot Street in Manchester. Mr. Konstantinou says he intended to keep Manchester Pizza House operating in the Price Chopper Plaza while his children ran the second restaurant as a way of introducing them to running a business.

On June 27, 2013, MSC assigned A & A's lease, along with the leases of other businesses in the Price Chopper Plaza, to Plaintiff Manchester CP. Under the terms of the assignment, Manchester CP assumed MSC's obligations "arising from and after the date hereof."

Soon after Manchester CP became the landlord, another tenant informed Mr. Konstantinou of Manchester CP's plans to tear down the shopping center in order to expand the Price Chopper building. He contacted a town zoning official and collected newspaper articles about the plans. Mr. Konstantinou confronted Manchester CP's agents over the phone, who denied that they were going to tear down the shopping center. Mr. Konstantinou arranged to meet with two Manchester CP agents, John W. Hueber (father) and Jonathan W. Hueber (son).

At this meeting, Mr. Konstantinou pressed the Huebers for details of the plan. He asked how long renovations had taken at other shopping centers they owned. The Huebers initially denied they were planning to renovate the Plaza, but acknowledged that previous projects had taken approximately a year-and-a-half. They later admitted that construction would start "soon," but refused to give an exact time period. When Mr. Konstantinou replied that he would lose his market share if his business were closed for that long, Jonathan Hueber responded that that was his fault for signing the lease. Mr. Konstantinou also requested that Manchester CP agree to replace his restaurant's heating system. The Huebers refused.

About a month after their meeting, Mr. Konstantinou requested Manchester CP's assistance in mediating a conflict between him and an adjacent business owner. The neighbor had tapped into Mr. Konstantinou's plumbing, clogged the pipes, and would not allow a plumber to enter his restaurant to fix the problem. The Huebers refused to get involved. By tearing up his floor to access the pipes, Mr. Konstantinou's plumber was able to fix the problem from the Manchester Pizza House. Mr. Konstantinou withheld a portion of rent related to the loss of business during the time he had to close his restaurant for the repairs.

---

[2] There are also frequent references in the record to a "Kimco" corporation as the landlord prior to Manchester CP. It appears that Kimco Manchester 1120, Inc. was MSC's sole member. The court refers to MSC as the original landlord to avoid confusion.

In the first week of August 2013, Jonathan Hueber called Mr. Konstantinou, angry that A & A had withheld a portion of the rent. Mr. Hueber yelled at Mr. Konstantinou and called the Manchester Pizza House a "[f---ing] mom and pop" store. Mr. Hueber ended the conversation by hanging up on Mr. Konstantinou.

On October 15, 2013, Mr. Konstantinou filed incorporation papers for a "Manchester House of Pizza" (MHOP).

In May 2014, A & A stopped paying rent and shut down the Manchester Pizza House. Approximately three weeks after Manchester Pizza House closed, MHOP opened a restaurant at the old Friendly's building owned by Saronis LLC. On June 4, Manchester CP sent a Notice of Default, stating that A & A had breached their lease. Mr. Konstantinou called Mr. Hueber to explain why he had left the shopping center. Mr. Hueber told Mr. Konstantinou that the Friendly's building would be his. Mr. Konstantinou cursed at Mr. Hueber and hung up.

On June 20, 2014, Manchester CP sent A & A a Notice of Termination regarding the lease. Soon after receiving the Notice, Mr. Konstantinou talked with Jon Walluck, another agent of Manchester CP, over the phone. Mr. Walluck told Mr. Konstantinou that his actions had consequences and threatened to "take [him] for everything," including his house. Mr. Konstantinou asked Mr. Walluck not to call him because he was about to travel to Boston, Massachusetts for an MRI. He told Mr. Walluck that his doctor had informed him that he was "terminal." Mr. Walluck responded that Manchester CP could still take his house even if he died. Mr. Konstantinou ended the conversation by hanging up on Mr. Walluck.

*Summary Judgment Standard*

A party is entitled to summary judgment where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Vermont Rule of Civil Procedure 56(a). A fact is material only if it might affect the outcome of the case. *O'Brien v. Synnott*, 2013 VT 33, ¶ 9, 193 Vt. 546. The court "will accept as true the allegations made in opposition to the motion for summary judgment, so long as they are supported by affidavits or other evidentiary material." *Robertson v. Mylan Labs., Inc.*, 2004 VT 15, ¶ 15, 176 Vt. 356. "[T]he nonmoving party receives the benefit of all reasonable doubts and inferences." *Id.*

*Analysis*

I.  *Adequate time for discovery*

As a preliminary matter, the court will address Counterclaim Plaintiffs' assertion that summary judgment is inappropriate because discovery has not been completed. This argument is contrary to the law; completion of discovery is not required, only an adequate time for discovery is required. *Town of Victory v. State*, 174 Vt. 539, 543-44 (2002). Even if the court were to interpret Counterclaim Plaintiffs' arguments to mean that there has been an inadequate time for discovery, the court would reject such an argument. A & A and Mr. Konstantinou filed their counterclaims on December 8, 2014, nearly a year before Manchester CP filed this motion. They

had months to review Manchester CP's discovery answers and conduct relevant depositions. The fact that not all of Manchester CP's agents have been deposed is irrelevant to Mr. Konstantinou's IIED claim, as he was present for all the relevant interactions and he has been deposed. Further, as explained below, additional discovery would not cure the flaw that is fatal to the first three counterclaims. Accordingly, the court holds that there has been an adequate time for discovery such that the court may rule on Manchester CP's motion.

II.     *Counterclaims 1-3*

Counterclaim Defendant Manchester CP has moved for summary judgment on Counterclaims 1-3 (anticipatory repudiation, constructive eviction, and breach of contract) on the ground that there is no applicable exception to the general rule that a successor-in-business is not liable for acts committed by its predecessor. In opposition, Counterclaim Plaintiffs contend:

> [I]t is an incorrect and unsupported assertion that Counterclaimants' claims are only directed at the predecessor to Plaintiff for that time period prior to the Plaintiff assuming the rights and obligations as owner of the Manchester Shopping Center. As is set forth in the Counterclaims, and discussed at length in the accompanying affidavit of Argirios Konstantinou, [Manchester CP] bears its own liability for its continuation of the misdeeds of the predecessor, and merits liability for its own misconduct, breach of contract, constructive eviction and infliction of emotional distress.

Counterclaim Plaintiffs are simply wrong; their counterclaims clearly and unambiguously state that "[Manchester CP] *as assignee in interest to MSC is liable* to the [Counterclaim Plaintiffs]" for claims based on the theories of anticipatory repudiation, constructive eviction, and breach of contract. See Answer ¶¶ 25, 28, 31 (emphasis added). Each of the counterclaims incorporates the previous paragraphs, which solely refer to MSC's conduct, *not* Manchester CP's conduct. See Answer ¶¶ 1-15. Counterclaim Plaintiffs explicitly pled that it was MSC who forced A & A to vacate the shopping center. See Answer ¶¶ 13-15. They also specified that it was MSC's actions and inactions that denied A & A the right of quiet enjoyment of the leased premises and caused "severe business interruption and loss." See Answer ¶¶ 10-11. There was no mention of Manchester CP's conduct giving rise to the counterclaims in their pleadings.

While A & A and Mr. Konstantinou could have submitted a motion to amend their counterclaims, they have chosen not to do this. Counterclaim Plaintiffs may not defeat a motion for summary judgment by stating that their pleadings mean something that they plainly do not mean. Moreover, this is not a situation where a party has pled a general theory in which new material facts came to light as discovery progressed. This is a situation in which Counterclaim Plaintiffs have completely altered a basic premise of their case without providing prior notice to the opposing party through a motion to amend. If Counterclaim Plaintiffs were not required to support the theory they espouse in their pleadings, they could return to their original theory of successor liability at trial without notice to Manchester CP. Thus, Manchester CP is entitled to summary judgment on these counterclaims if, as a matter of law, it is not liable for MSC's conduct prior to the assignment of the lease.

As stated by the Vermont Supreme Court, where a change of ownership is accomplished through a sale of assets only, the successor corporation is only liable if one of five exceptions apply:

> (1) [T]he buyer expressly or impliedly agrees to assume such liabilities; (2) the transaction amounts to a de facto merger or consolidation; (3) the purchasing corporation is merely a continuation of the selling corporation; (4) the sale is a fraudulent transaction intended to avoid debts and liabilities; (5) inadequate consideration was given for the sale.

*Ostrowski v. Hydra-Tool Corp.*, 144 Vt. 305, 307 (1984). Therefore, if one of these exceptions does not apply, Manchester CP, as a successor corporation, is not liable to Counterclaim Plaintiffs for its predecessor's conduct.

Here, there are no facts in the record indicating that MSC's assignment of A & A's lease meets the requirements for exceptions (2) – (5). Further, the terms of the assignment of the lease expressly state that Manchester CP was not assuming MSC's liabilities. Counterclaim Plaintiffs have not pointed to any facts indicating that Manchester CP impliedly agreed to assume MSC's liabilities. Thus, Manchester CP is entitled to summary judgment on these counterclaims because it may not be held liable for the alleged misconduct of its predecessor.

III.    *Counterclaim 4*

Mr. Konstantinou alleged that Manchester CP through its agents, rather than MSC, engaged in conduct making it liable under its IIED claim. Specifically, Mr. Konstantinou says that Mr. Hueber and Mr. Walluck made extreme and outrageous verbal threats against him with the intent to cause emotional distress and/or with the reckless disregard that the threats would cause emotional distress and that he in fact did suffer emotional distress as a result of the threats.

In early August 2013 and early June 2014, Jonathan Hueber called Mr. Konstantinou. According to Mr. Konstantinou, Mr. Hueber yelled in both instances. In the first call, Mr. Hueber allegedly referred to the restaurant as a "[f---ing] mom and pop" store. In the second call, he threatened to take old Friendly's building, which was owned by Mr. Konstantinou's Saronis LLC. Then, sometime shortly after June 20, 2014, Mr. Walluck called Mr. Konstantinou. Mr. Konstantinou informed Mr. Walluck he was on his way to receive an MRI and that he had been told he was "terminal." Mr. Walluck also yelled at him and told Mr. Konstantinou that there were consequences for A & A's failure to pay rent. He threatened to take Mr. Konstantinou's house even if Mr. Konstantinou died.

Mr. Konstantinou testified that Mr. Hueber's statements caused him emotional distress, depression, and embarrassment. He said Mr. Hueber's reference to his restaurant as a "[f---ing] mom and pop" store caused emotional distress and that he was depressed because the interaction was not with a random customer, but with a person he had to have an ongoing relationship with. He was offended by Mr. Hueber's use of profanity and the context in which it was used. He also stated that he was scared because Manchester CP's agents had money. However, he acknowledged that he did not experience anxiety.

5

In an affidavit attached to his opposition to the current motion, Mr. Konstantinou states that Mr. Hueber's threats "caused me severe emotional distress" because they were made at a time in which he, his wife, and son were suffering health problems. As a result of the threats Mr. Konstantinou states, "I could not get up in the morning, my desire to participate in anything diminished dramatically, and I walked around afraid that Mr. Huber [sic] was going to take everything I had worked for over the years from me."

Mr. Konstantinou's daughter, Garifalia "Lia" Konstantinou testified that she observed her father changed demeanor. She thought her father appeared "shaken up" by Mr. Hueber's threat, although he was not depressed and did not have to take any medications or go to therapy. Ms. Konstantinou stated that her father was afraid because Manchester CP was "rich" and that they would take his money. She explained that her father interpreted the Mr. Hueber's threat not just as an attack against him, but as a threat to his entire family's livelihood.

As stated by the Vermont Supreme Court:

> To avoid summary judgment on a claim for IIED, plaintiff must show that the [defendant] engaged in outrageous conduct, done intentionally or with reckless disregard of the probability of causing emotional distress, resulting in the suffering of extreme emotional distress, actually or proximately caused by the outrageous conduct. This is a heavy burden that requires plaintiff to show that the [defendant's] conduct was so outrageous in character and so extreme in degree as to go beyond all possible bounds of decent and tolerable conduct in a civilized community and be regarded as atrocious and utterly intolerable. The standard for outrageousness is objective.

*Cate v. City of Burlington*, 2013 VT 64, ¶ 28, 194 Vt. 265 (internal quotation marks and citations omitted); see also *Baldwin v. Upper Valley Servs., Inc.*, 162 Vt. 51, 57 (1994) (regarding the "objective test for outrageousness: a plaintiff must demonstrate legal harm resulting from inflicted distress so severe that no reasonable person could be expected to endure it").

The Vermont Supreme Court has listed "threats" among the types of acts that do not give rise to liability under an IIED claim. See *Denton v. Chittenden Bank*, 163 Vt. 62, 66-67 (1994). In *Denton*, the Vermont Supreme Court held:

> We have never extended liability to "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." See Restatement [(Second) of Torts] § 46 cmt. d [(1965)]. Because laws proscribing conduct must be specific enough to give fair notice of what conduct will give rise to liability, we decline, on these facts, to extend liability to a series of indignities. Absent at least one incident of behavior that transcends the ignoble and vast realm of unpleasant and often stressful conduct in the workplace, incidents that are in themselves insignificant should not be consolidated to arrive at the conclusion that the overall conduct was outrageous.

*Id.*

6

Here, even taking the relevant context into account, Mr. Konstantinou cannot meet his heavy burden to show that the threats made by Mr. Hueber and Mr. Walluck were extreme and outrageous. While undoubtedly it was upsetting to hear Mr. Hueber denigrate the business he and his family had worked hard to run for decades, the mere use of profanity does not go beyond all possible bounds of decent and tolerable conduct.

In reaching this conclusion, the court acknowledges that the facts in *Denton* are distinguishable from this case. The conduct that could have been interpreted as "threats" in *Denton* was the supervisor's vague indication that the plaintiff was not qualified for his job and his calling the plaintiff an "old man" in front of the plaintiff's son. See *Denton*, 163 Vt. at 64-65. The Vermont Supreme Court held that this conduct and other work-related conduct did not rise above the level of "mere insults, indignities, or annoyances." *Id.* at 65.

Here, Manchester CP's agents threatened to take both his home and the building his corporation owned and rented to his daughter. These statements are more serious than calling an employee "old man" in front of his child. However, these statements were merely reinforcing their intent to sue for breach of contract. There was no suggestion that the agents were implying that they would resort to criminal acts in order to take the house or old Friendly's building. Therefore, the court concludes that these threats were still no more than a series of threats and indignities. As such, these comments are insufficient to maintain an IIED claim under *Denton*'s rule.

Further, even if Mr. Walluck's statement was extreme and outrageous given the context that he had just been told that Mr. Konstantinou was potentially dying, Mr. Konstantinou has not pointed to any evidence demonstrating that he experienced extreme emotional distress. He stated that Mr. Walluck's comment did not affect him as much as Mr. Hueber's statements. All he has said regarding his injuries is that he had some trouble getting up in the morning and his desire to engage in activities was diminished. Such injuries do not rise to an actionable level. Thus, Manchester CP is not liable for any emotional distress Mr. Konstantinou may have suffered as a result of Mr. Hueber and Mr. Walluck's statements.

## Order

WHEREFORE, it is hereby ORDERED that Manchester CP's motion for summary judgment is GRANTED as to Counterclaims 1-4 (anticipatory repudiation, constructive eviction, breach of contract and IIED) and those counterclaims are hereby DISMISSED.

So ordered.

Electronically signed on March 04, 2016 at 04:12 PM pursuant to V.R.E.F. 7(d).

*John W Valente*

John W. Valente
Superior Court Judge

7

Notifications:
Patrick J. Bernal (ERN 5550), Attorney for Plaintiff Manchester CP
Lloyd J. Weinstein (ERN 6012), Attorney for Defendant A & A Restaurant Inc.
Lloyd J. Weinstein (ERN 6012), Attorney for Defendant Argirios Konstantinou
Lloyd J. Weinstein (ERN 6012), Attorney for Defendant MHOP Restaurant Corp.
Lloyd J. Weinstein (ERN 6012), Attorney for Defendant Saronis, LLC