Filed 11/20/23

VERMONT SUPERIOR COURT

Rutland Unit
83 Center St
Rutland VT 05701
802-775-4394
www.vermontjudiciary.org



CIVIL DIVISION
Case No. 21-CV-00636

| Susan Haviland v. Meadows at East Mountain The |
|---|

## ENTRY REGARDING MOTION

Title:        Motion for Summary Judgment  (Motion: 13)
Filer:        Kaveh S. Shahi
Filed Date:   September 01, 2023

The motion is GRANTED IN PART and DENIED IN PART.

Following the June 23 2021 decision on the Defendant's Motion to Dismiss, two causes of action remain in the case: (1) a claim of negligence brought as a survival action by the Fiduciary of the Estate of Hazel Adams, including a request for punitive damages, and (2) a consumer fraud claim. Plaintiff, decedent's daughter, claims negligence on the part of the Defendant residential care facility, The Meadows, where her mother lived in her late 80's prior to death for not preventing her from being sexually abused by another resident of the facility, Mr. Washam. Defendant claims that the physical relationship between the two residents involved "a handful of kissing and hand-holding incidents" and was consensual.

Defendant now seeks summary judgment on both claims. Plaintiff has not opposed the Motion with respect to the consumer fraud claim. The Motion is granted on that claim for the reasons set forth by Defendant.

With respect to the negligence claim, there are numerous disputes of material fact as to the residents' relationship and Defendant's conduct in response.  In this Motion, Defendant argues that the claim fails despite disputed facts because the Plaintiff is obliged to have expert testimony on the element of causation of injury and did not timely disclose expert opinion testimony on that issue.

Defendant's argument rests on the premise that the entire claim is one of medical malpractice, which ordinarily requires expert testimony on the causal relationship between the alleged negligent conduct and the injury for which damages are claimed. In introducing the argument, Defendant highlights ¶ 71 of Plaintiff's Amended Complaint, which reads: "To the extent Defendant qualifies as "health care professionals" within the scope of 12 V.S.A. § 1908, Defendant owed Hazel C. Adams the duty of care set forth in that statute."  Defendant points out that where 12 V.S.A. § 1908 applies, the plaintiff has the burden of proving the standard of care of a "reasonably skillful, careful, and prudent health care professional," the failure to exercise

this care, and that the plaintiff suffered injuries that would not have otherwise occurred as a proximate result of the lack of knowledge or skill or failure to exercise the standard of care. While the statute itself does not mandate expert testimony, case law usually requires it.

However, ¶ 71 by its language is a partial statement of the claim as shown by the introductory clause, which is conditional: "To the extent that. . ." 12 V.S.A. § 1908 applies to "the negligence of the personnel of a hospital" as well as specified health care professionals. The Meadows is a residential care facility. In a hospital, presumably all patients are there for medical treatment, whereas residents of a residential care facility are there for support for daily living and may not receive medical treatment from the facility itself. There are insufficient facts at this time to conclude that Defendant falls within the definition of a "hospital" for purposes of this statute.

In addition to ¶ 71, there is also ¶¶ 72-73, in which Plaintiff alleges negligence on the part of Defendant in employing, training, monitoring, and supervising staff in the care provided, and alleges that Defendant deviated from the standard of care required of a residential care home. The claim as a whole seeks to hold The Meadows as owner of the facility vicariously responsible for negligence on the part of its employees in providing residential care. The facts alleged in Plaintiff's complaint and in Plaintiff's Statement of Undisputed Facts make it clear that the claim is based on the actions of several personnel at the Meadows, including administrators and support staff. Such persons are not among the specified licensed professionals identified in 12 V.S.A. § 1908 (physician, dentist, podiatrist, chiropractor, nurse, or osteopathic physician).

Moreover, the statute itself does not require expert opinion evidence of causation. Case law is that in medical malpractice cases, "ordinarily" expert testimony on causation is required because of the complexity of cause and effect in the context of the human body. *Wilkins v. Lamoille County Mental Health Services, Inc.,* 2005 VT 121, ¶ 16. There is an established exception "where the alleged violation of the standard of care is so apparent that it may be understood by a lay trier of fact without the aid of an expert." *Larson v. Candish,* 144 Vt. 499 (1984). Understanding the extent to which sexual abuse and/or unwanted sexual contact, if proved, can cause some level of emotional damages is within the realm of understanding of lay persons. Therefore, to the extent the harm for which damages are sought is emotional harm, expert testimony is not needed.

Plaintiff has responded to the Motion by disclosing opinion testimony on causation from two experts that were previously disclosed as experts with more limited opinions.

Dr. Robert Feder is a psychiatrist who was initially disclosed as an expert to give an opinion regarding the capacity of Hazel Adams to consent to sexual activity. His opinion was described in a report dated May 29, 2023. Throughout the discovery period, the attorneys agreed on multiple revisions and extensions of the deadlines in pretrial scheduling orders (so-called "ADR Orders"). The last was dated August 21, 2023, and stated that the Plaintiff's expert disclosures were "completed," and the date for completion of depositions of Plaintiff's experts was set at October 15, 2023.

After the timely filing of Defendant's Motion for Summary Judgment on September 1, 2023, Dr. Feder wrote a supplemental report dated October 12, 2023 in which he sets forth the

additional expert opinion that Hazel Adams suffered "psychological and physical harm because of . . .inappropriate sexual touching. . .and The Meadows' failure to stop it." (Exhibit 10, page 2.) This report was filed on October 18, 2023 with Plaintiff's Opposition to the Motion for Summary Judgment. Defendant argues that the additional opinion is untimely and should be excluded.

Dr. Ann Wolbert Burgess is a psychiatric nurse who wrote a report that included expert opinions on April 27, 2022 and she wrote a supplement on October 8, 2022. She stated opinions including that Ms. Adams "suffered significant acute and chronic trauma starting in 2018 and ending in 2019" (the period she was exposed to Mr. Washam). In addition, she expressed the following opinion with respect to one particular allegation of harm in which Ms. Adams complained of chest pains and was taken to the Emergency Department: that Defendant deviated from the standard of care in failing to supervise Mr. Washam and that his behavior to Ms. Adams "was a substantial factor in causing the condition that required her admission to the Emergency Department March 2, 2019 only a day after Washam had been removed from her room more than once in the days and weeks before." (Exhibit S2, page 3.) Dr. Burgess was deposed on November 29, 2022.

Following Defendant's September 1, 2023 Motion for Summary Judgment, she wrote an additional report dated October 12, 2023, also filed on October 18, 2023 with Plaintiff's Opposition, in which she sought to "clarify 6 points." (Exhibit 12, page 1.) Again, Defendant argues that such opinions were created in response to the Motion and that they are out of time and should be excluded. The first four points appear to be elaborations of the opinions she expressed in her disclosure prior to her deposition. Defendant has not shown that any material is new and different from her prior opinions and/or what she could have been or was asked about at deposition.

Her fifth point is a new allegation that bruises found on Ms. Adam's right flank were caused by Mr. Washam's inappropriate conduct.

Her sixth point relates to causation and purports to cover all of the previous five opinions. She wrote:

> The Meadows' breaches of the standards of care, lack of reasonable care, and resulting failures to prevent Patrick Washam's continued pattern of abuse during Ms. Adams' residency at The Meadows, were a direct and foreseeable cause of Hazel Adams suffering significant and serious emotional and psychological harm, anguish, distress and physical injury. But for its breaches of the standards of care, Ms. Adams more likely than not would not have suffered these emotional, psychosocial and physical harms.

*Id.* at page 5.

As to both Dr. Feder and Dr. Burgess, Defendant argues that without the opinion testimony added after the expiration of discovery deadlines and after the Motion for Summary Judgment was filed, Plaintiff has no medical expert testimony on causation of damages, and thus cannot prove her claim of negligence. Plaintiff has not sought permission to disclose expert

witness opinions beyond the date of August 21, 2023 when Plaintiff agreed that expert disclosures were completed, and there is no indication of newly discovered evidence or any other valid reason why disclosure of such opinions should be allowed beyond clearly established deadlines.

The additional opinion of Dr. Feder is not a minor supplement or elaboration of his opinion previously and timely disclosed. Rather, it is a completely new opinion disclosed after the deadline for deposing Plaintiff's experts. Defendant cites case law supporting the exclusion of such evidence as prejudicial. If the new opinion testimony were to be allowed, Defendant should be entitled to a reasonable period of time for deposition. To allow discovery to be reopened for an entirely new opinion on a previously undeveloped issue would be to allow the pretrial order, designed to promote efficiency and timely case resolution, to be meaningless and cause unjustified delay even if the expense of an additional deposition were assigned to Plaintiff. Therefore, the new opinion disclosed by Dr. Feder after August 21, 2023 may not be used either in opposition to the pending Motion for Summary Judgment or at trial.

With respect to the opinions of Dr. Burgess, the court concludes that her opinions expressed in points 1-4 and 6 in the October 12, 2023 report are in line with her previously disclosed opinions and constitute clarification of them. Defendant had the opportunity to examine her about those in taking her deposition.

Defendant argues that her prior reports as well as the new ones were missing an opinion that the harm Ms. Adams allegedly suffered would not have occurred "but for" Defendant's conduct in failing to prevent contact from Mr. Washam. Defendant relies on the provision in 12 V.S.A. § 1908 (3) that requires opinion testimony that plaintiff's injuries "would not otherwise have been incurred." This argument is pertinent to the incident in which Ms. Adams was taken to the Emergency Department when she was experiencing chest pains. Dr. Burgess's opinion was that Mr. Washam's permitted behavior was a "substantial factor" contributing to Ms. Adams' Emergency Department admission in which she reported chest pains. Dr. Burgess could only say it was a "substantial factor;" she has not opined that Ms. Adams would not have had chest pains but for the situation with Mr. Washam and it is not clear that she would have the necessary medical expertise to give such an opinion. Therefore, Dr. Burgess is precluded from testifying as to causation of the physical condition (chest pains) for which Ms. Adams went to the ER on March 2, 2019. This is exactly the kind of physical injury that requires expert "but for" opinion causation testimony. However, as to the other opinions expressed in points 1-4 and 6 in the October 12, 2023 report, these are not new, but are refinements of opinions related to emotional damages that were timely disclosed and which Defendant had the opportunity to explore during the deposition of Dr. Burgess. The opinions as expressed, as well as Plaintiff's alleged factual evidence, carry a strong "but for" inference understandable by lay persons that is sufficient to allow such opinions to go to the jury.

That is not the case with respect to the opinion expressed for the first time in point 5: "there is **bruising** noted on Hazel Adams flank that more likely than not was caused by Patrick Washam's inappropriate conduct." It does not appear that Dr. Burgess had previously expressed this opinion. It must be excluded for two reasons: (1) it is a new and untimely opinion on a new

claim of harm, disclosed after disclosures were due and the deadline for depositions, and (2) it is an opinion about a cause-and-effect relationship between Defendant's conduct and a physical bodily injury. Again, this is exactly the kind of physical injury that requires clear expert "but for" expert opinion causation testimony.

In sum, the opinion of Dr. Feder in his October 12, 2023 report and the opinion of Dr. Burgess on point 5 in her October 12, 2023 report may not be used in connection with this Motion or at trial.

However, as previously noted, some conduct on which the negligence claim is based and for which Plaintiff seeks to hold Defendant vicariously liable may not require expert opinion testimony, as lay jurors will not require specialized expert knowledge to understand emotional harm caused by sexual abuse or sexually assaultive behavior, if such is proved. In addition, Dr. Burgess opinion testimony as to emotional injuries as set forth in her 2022 reports and in points 1-4 and 6 of the October 12, 2023 may be used.

Therefore, Defendant has not shown that Plaintiff lacks admissible testimony on causation sufficient to go to the jury with respect to negligence. The Motion for Summary Judgment is therefore denied on the negligence claim.

**Summary**

The Motion is *granted* with respect to the consumer fraud claim.

The Motion is *denied* with respect to the negligence claim.

Plaintiff is precluded from introducing at trial the opinion evidence disclosed by Dr. Feder in his October 12, 2023 report and by Dr. Burgess in point 5 of her October 12, 2023 report (Exhibit 12, page 5.).

Pursuant to the pretrial scheduling Order of August 21, 2023, the case is ready for trial as of December 1, 2023. The case will be scheduled for a pretrial conference and jury draw in conjunction with the next scheduled jury draw.

Electronically signed November 20, 2023 pursuant to V.R.E.F. 9 (d).

Mary Miles Teachout
Superior Judge (Ret.), Specially Assigned